T. WOODWARD TRAINER *v.* SELDEN S. DEEMER.

(*May* 22, 1933.)

PENNEWILL, C. J., and HARRINGTON, J., sitting.

*John J. Morris, Jr.,* for plaintiff.

*Thomas M. Keith* for defendant.

Superior Court for New Castle County, Assumpsit, No. 152, May Term, 1931.

PENNEWILL, C. J., delivering the opinion of the Court:

This is an action of assumpsit, in which the declaration contains seven common counts, the one particularly relied upon being that for services rendered (work and labor done). The declaration, as amended, has affixed to it the following Bill of Particulars:

"Jan. 30, 1928
"Selden S. Deemer to T. Woodward Trainer, Jr.

"To furnishing the name of a purchaser for the foundry property near New Castle, Delaware, which name was American Chemical Co. of Ambler, Pa.,

"$2500.00."

Among other pleas, the defendant has filed two, Nos. 3 and 4, alleging that the plaintiff has no cause of action because his act of furnishing the name of the purchaser, as set out in the Bill of Particulars, constituted conducting

a real estate business; and because the plaintiff had no license or certificate authorizing him to act as a real estate broker in the State of Delaware at that time. The plaintiff demurred to the above mentioned third and fourth pleas.

Another of the defendant's pleas, No. 2, was that of the statute of limitations. To this plea the plaintiff filed a special replication, the material part of which is as follows:

"Although the said plaintiff admits that the said defendant did not at any time within the three years next before the commencement of this suit, expressly undertake, or promise to pay the amount demanded in the aforesaid amended declaration and although the said defendant did actually convey the real property mentioned in said amended declaration at a time prior to three years before the commencement of this action, nevertheless, the said plaintiff says that the said defendant is not within the protection of the statute of limitations in this action, because the said defendant, by fraud and active concealment, kept the said plaintiff in ignorance of his, the said plaintiff's, cause of action until to-wit July 17th, A. D. 1930. That the said fraud and concealment consisted of the withholding by the said defendant from the said plaintiff of the information that he, the said defendant had sold or agreed to sell the aforementioned property to the American Chemical Paint Co., the purchaser whose name was furnished by the said plaintiff to the said defendant, as alleged in the Bill of Particulars to the aforementioned amended declaration; and that the said fraud and concealment further consisted of a pretense and publication that the said defendant had sold the said property to 'The Tide Water Fertilizer Company' on or about the thirteenth day of April, A. D. 1928; that the said fraud and concealment further consisted in the use of two straw men, or the use of the names of two men who were not actually the purchasers of the said property as a conduit of title from the said defendant to the said American Chemical Paint Co.; that the first of the said straw men took title to the aforesaid property by a deed from the said defendant dated April 13th, A. D. 1928, and recorded April 20, 1928, in the office of the Recorder of Deeds, in and for New Castle County aforesaid; that the second of the said straw men took title to the aforesaid property by a deed from the first of the said straw men and his wife, dated April 25, 1928, and recorded April 27, 1928, in the office of the Recorder of Deeds aforesaid; and the said American Chemical Paint Co. took title to the said property by a deed from the second of the said straw men dated February 17, 1931, and recorded in the office aforesaid on February 19, 1931; but that the sale of the said property by the said defendant on or about the thirteenth day of April, 1928, was actually, and was then known to the defendant to be a sale to the said American Chemical Paint Co.

"The said plaintiff was informed at or about the time of the first aforesaid conveyances of the said title that the said sale had been made to the Tide Water Fertilizer Co.; that the said plaintiff had no way of discovering that the said report was untrue, and the

said plaintiff did not discover that the said defendant had actually sold the said property to the said American Chemical Paint Co., until to-wit, July 17, 1930, when he was advised thereof by one who had received information thereof.

"And the said plaintiff used due diligence to discover to whom the purchase was made and he could not have, by the use of reasonable diligence, made the discovery of the actual facts at any time before the 17th day of July, A. D. 1930, and this the said plaintiff is ready to verify."

The defendant demurred to the above quoted special replication.

The defendant, in his brief, set out as grounds for his demurrer to the above quoted special replication, the following:

(a) That mere silence is not sufficient to prevent the running of the Statute of Limitations;

(b) That the defendant made no pretense nor publication which would prevent the running of the Statute of Limitations;

(c) That the allegations in the special replication are not allegations of fraudulent concealment on the part of the defendant;

(d) That the statute should run because the replication fails to allege that the defendant informed plaintiff that the sale in question had been made to the Tide Water Fertilizer Company;

(e) That the replication failed to show that the plaintiff had exercised reasonable diligence to discover the fraud.

In discussing the cases in which fraud has been held to prevent the running of the Statute of Limitations, *Ruling Case Law*, § 215, *Volume* 17, has this statement:

"In such cases it is declared that where one by fraud conceals the fact of a right of action, it is not ingrafting an exception on the statute to say that he is not protected thereby, but it is simply saying that he never was within the statute, since its protection was never designed for such as he. By fraud he has put himself outside his pale. Whether this be taken as an exception or only a limitation of the statute, it is said to rest upon sound reason and just policy. Furthermore, the delay in bringing the suit is owing to the fraud of the defendant, and the cause of action against him ought not to be considered as having accrued until the plaintiff could obtain the knowl-

edge that he had a cause of action. And it has been decided by the United States Supreme Court that where the action is to obtain relief against fraud concealed by the party, or which from its nature remains secret, the bar does not commence to run until the fraud is discovered, the court declaring that the weight of judicial authority both in this country and in England is in .favor of the application of the rule to suits at law, as well in equity, such a conclusion being founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law, which was designed to prevent fraud, the means by which it is made successful and secure."

The above quotation of *R. C. L.* cites, among other cases, the Delaware case of *Lieberman v. Wilmington First National Bank,* 2 *Penn.* 416, 45 *A.* 901, 903, which is also reported in 82 *Am. St. Rep.* 414, and in 48 *L. R. A.* 514. In that case, the Supreme Court in a carefully considered and extended opinion sustained the opinion of the Chancellor holding that fraud and its active concealment deprived the defendant of the benefit of the Statute of Limitations. A part of the opinion bearing on this point follows:

"The question whether the fraudulent concealment of the existence of the cause of action will hinder the operation of the statute of limitations is one which has been much discussed, and upon which there has been a radical difference of opinion. On one side it is said that the statute in plain terms fixes the time when action shall be brought after the cause of action accrues; that the cause of action accrues when the act is done and the fraud is consummated, and from that time, and not from the plaintiff discovered it, the statute interposes as a protection; that while courts of equity may make an exception in cases of fraud, because they are not strictly bound by the statute, yet for courts of law to do the same is to except from the law cases which are plainly within its terms.

"On the other side, it is said that the statute must be expounded reasonably, so as to suppress, and not to extend, the mischiefs it was intended to cure; that it was intended to suppress fraud, by preventing unjust claims from starting up after a great lapse of time, when evidence by which they might be repelled was forgotten or had ceased to exist; that it should not, therefore, be so construed as to encourage fraud, by enabling those who, through falsehood or deceit, have managed to keep one in ignorance of the fact that he had a cause of action, to take advantage of their own wrongdoing under a plea of the statute.

" 'We think,' says the court in *Reynolds v. Hennessy,* 17 *R. I.* 169 [20 *A.* 307], 23 *A.* 639, 'the latter position is best sustained by reason and authority. It certainly is in the line of justice and morality. The only objection to it is that it introduces an exception into the statute.' The same objection lies to claims in favor of the government, and to cases of new promise. The statute does not take away the debt, but simply affects the remedy. Hence, if one by fraud conceals the fact of a right of action, it is not ingrafting an exception on the statute to say that he is not protected thereby, but it is simply saying that he never was within the statute, since its protection was never designed for such as he. By fraud he has put himself outside of its pale. Whether this be taken as an exception, or only a limitation of the statute, it rests upon sound reason and just policy."

In *Volume* 17, of *Ruling Case Law,* at *Section* 217, *page* 857, is the following statement:

"And the general trend of the decisions is in support of the rule that where a party against whom a cause of action has accrued in favor of another by actual fraudulent concealment prevents such other from obtaining knowledge thereof, or the fraud is of such a character as to conceal itself, the statute of limitations will begin to run from the time the right of action is discovered, or, by the exercise of ordinary diligence, might have been discovered."

The authorities from which we have quoted so clearly express the law on the subject under consideration it is deemed unnecessary to refer to other authorities to the same effect which are very numerous. The Delaware case in itself would be controlling with this Court.

The quotations from 17 *R. C. L., supra,* are generally regarded as correct statements of the law, and have been approved and adopted in many cases.

But while the law is clear, its application must depend in every case upon the facts. In the present case it is claimed that the defendant did not intentionally and fraudulently conceal the right of action, and that even if he did, the plaintiff might, by the exercise of due care and diligence, have discovered it. This the plaintiff denies.

Such material facts being in dispute the court are of the opinion that the case should be submitted to the jury under proper instructions from the court, unless the plaintiff is prevented from maintaining his action by other statutory law of this state.

There is authority in our own state in support of the conclusion that the case should be submitted to the jury upon the question of concealed fraud.

In *Williams v. Beltz & McGillick*, 7 *Boyce* 360, 107 *A.* 298, 300, the Court said:

"In the case at bar the false representations were made prior to April 1, 1913, and the action commenced June 1, 1916. But there was testimony by the plaintiff that he did not know of the contract between the company and Beltz until November 22, 1913. If there was a conflict of testimony on the question as to the time of discovery of the fraud, or if it be urged that the plaintiff should, by the exercise of reasonable diligence, have discovered the fraud earlier, then both questions should have been left to the jury under proper instructions as to the application of the statute of limitations."

We come now to the consideration of defendant's second point, viz.: That the plaintiff is barred from recovery because he had no license or certificate authorizing him to engage in the business of real estate broker, or to sell or negotiate the sale of real estate in this state.

This question is raised by plaintiff's demurrer to defendant's third and fourth pleas.

There are two statutes involved, and referred to in the pleadings. We shall not state at length either the pleadings or the statutes. The issue raised by the pleadings has been stated, and it is only necessary to give the parts of the statutes pertinent thereto.

One of the statutes referred to is *Section* 217 of the *Revised Code* of 1915, which provides that no person, without first having obtained a proper license therefor, shall, within the limits of this state, engage in or carry on any trade or business, etc. This statute covers real estate, brokers, or agents.

The plaintiff contends that the furnishing of the purchaser's name, hereinbefore mentioned (an isolated transaction) without procuring a license, did not constitute carrying on the business of real estate broker or agent, and was not, therefore, a violation of the statute.

We are of the opinion that plaintiff's contention in this regard is sound, and amply supported by authority. Indeed, there seems to be unformity of authority in holding that a single transaction is not doing or engaging in business in the meaning of a statute similar to ours.

In *Volume* 12, *R. C. L.*, § 48, it is said:

"It seems to be the concensus of opinion that a corporation, to come within the provision of most statutes prescribing the conditions on the right of foreign corporations to do business within the statute, must transact therein some substantial part of its ordinary business, which must be continuous in the sense that it is distinguished from merely casual or occasional transactions, and it must be of such a character as to give rise to some form of legal obligation. Hence it may be laid down, as a general rule, that the action of a foreign corporation in entering one contract or transaction, an isolated business act in this state does not ordinarily constitute 'a carrying on or doing business therein.' "

This Court is not required to go so far as the text just quoted because there is, admittedly, but one transaction involved in the present case.

In *Ressler v. Marks,* 308 *Pa.* 205, 162 *A.* 666, decided by the Supreme Court of Pennsylvania, June 30, 1932, the plaintiff admitted that he was a regular real estate broker in Newark, N. J., but contended that he was not bound to take out a Pennsylvania license. This case, therefore, is very similar to the instant one. In its opinion the Court said:

"We are not prepared to hold that a single transaction would subject him to the tax here, or require him to take out a license before he could recover for his services."

In *Harlan v. Simering* (*Md. Court of App.,* Jan., 1933), 163 *A.* 693, the action was brought to recover compensation for services in informing the defendant of prospective purchasers of certain properties. The Maryland statute is strikingly similar to ours. The trial Court directed a verdict for the defendant on the ground that the plaintiff was precluded by the statute from maintaining the action because he was not a licensed real estate broker. The Mary-

land Court of Appeals quoted with approval the ·following from the opinion in *Kolb v. Burkhardt,* 148 *Md.* 539, 129 *A.* 670-672:

"But that the performance by an unlicensed person of a single, isolated act or transaction, pertaining to the business of a real estate broker, as defined by the statute, but unaccompanied by an intention or an attempt to engage in any form of such business, would not be sufficient to bring the unlicensed person within the denunciation of the statute."

The Court held in the *Harlan-Simering Case* that the plaintiff, in performing his agreement, was not acting as a real estate broker within the meaning of the statute.

But there is another, and later statute of this state, relating to real estate brokers and salesmen upon which the defendant seems to particularly rely. This statute is entitled "An Act to create a State Real Estate Commission: to register, define and regulate real estate brokers and real estate salesmen and to provide a penalty for the violation of the provisions hereof," enacted in 1927, and is *Chapter 63, Volume 35, Laws of Delaware,* as amended by *Chapter 82, Volume 37, Laws of Delaware. Section 3* of the *Act* declares that after July 1, 1927, it shall be unlawful for any person "to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman, without being registered and without a certificate of registration issued by the Delaware Real Estate Commission."

*Section 4* defines the real estate broker as one who, for compensation, sells or offers for sale, buys or offers to buy, or negotiates a purchase, sale or exchange of real estate, etc., as a whole or partial vocation.

The defendant insists that the later act is essentially different from the former one in its language respecting the acts of real estate brokers, and does not admit of the construction we have placed on the earlier one. He contends that the manifest intention of the *Act* of 1927 is to prohibit any act of a real estate broker who fails to obtain

a certificate as provided by the Act. It, therefore, cannot be held that a single, isolated act by the broker is not in contravention of the statute. He reaches this conclusion because,

1. The Act is specific and applies only to real estate brokers, whereas the earlier act is general and applies to a large number of professional and business men.

2. It is a regulatory and not a revenue act.

3. The earlier act applies to a person who engages in or carries on a business, while the later act makes it unlawful for any person to act as a real estate broker without first having obtained a certificate of registration, and defines a real estate broker as a person who buys or sells, or negotiates the sale of real estate.

4. The act was intended to regulate and control real estate brokers, to see that only honest, properly qualified and competent persons act as real estate brokers, to protect the public from dishonest and incompetent brokers and to protect real estate brokers of the state from irresponsible competition from outside the state.

The defendant says, the *Act* of 1927, means, when all of its provisions are considered, that no person shall act as a real estate broker, that is, do any act such as selling, or negotiating a sale, which act is the business of a real estate broker, without obtaining a certificate as provided by this Statute.

The defendant further says "it is admitted that the plaintiff is now, and for many years past has been engaged in carrying on the real estate brokerage business in Chester, Pa., and, therefore, comes directly under the provisions of the act."

We have given, in substance, the argument of the defendant in support of his claim that the meaning of the *Act* of 1927 is that a real estate broker cannot lawfully

perform a single act looking to the sale of real estate in this state without obtaining a certificate of registration. This argument is not convincing to the Court and we will briefly give our reason therefor:

If the Court are right in holding that a single act or transaction performed by a real estate broker, without a license, in effecting a sale, is not a violation of the general statute contained in the *Code* of 1915, § 217, we feel compelled to hold that a single act or transaction of such character would not be unlawful under the later act, even if there was failure to obtain a certificate of registration. In both Acts it is the real estate broker who is contemplated. In the one it is the broker who engages in the business of buying and selling real estate; in the other it is the person who acts as a real estate broker. It is not possible for the Court to see and appreciate the distinction contended for by the defendant. Whether expressed or not, a real estate broker is a person who engages in the business of buying and selling real estate. If a single, isolated transaction does not constitute the prosecution of the business of a real estate broker under the earlier act, how can such a transaction be prohibited by the later act when performed by a broker who is engaged in, or is prosecuting a real estate business. The later act must apply only to persons "engaged" in the real estate business because it defines the real estate broker contemplated by the act as one who buys, sells or negotiates the sale of real estate as a whole or partial avocation.

And so, our conclusion is, that when the plaintiff, who was a broker engaged in the real estate business in another state performed an act in effecting the sale of defendant's property without obtaining a certificate of registration, and performed no other act as a real estate broker in this state, it was not unlawful.

We may say, that in considering this question the Court have assumed, but have not decided, that in furnish-

ing the defendant the name of the prospective purchaser of his real estate, the plaintiff performed an act which was the business of a real estate broker. Whether it was or not is a disputed question in the case. The Court express no opinion thereon, and, in view of our decision of other questions involved, it is not necessary that we should.

Plaintiff's demurrer to defendant's pleas is sustained, and defendant's demurrer to plaintiff's special replication is overruled.