Thomas Edward ALLEN and Anna Pearl
Allen, Plaintiffs,

v.

Robert R. LAYTON, Jr., M.D. and Kent General Hospital (Incorporated), a corporation
of the State of Delaware, Defendants.

Superior Court of Delaware.

Kent County.

Nov. 2, 1967.

N. Maxson Terry, Jr., Terry & Terry, Dover, for plaintiffs.

William F. Taylor, Young, Conaway, Stargatt & Taylor, Wilmington, for defendant, Robert R. Layton, Jr., M.D.

William Prickett, Prickett, Ward, Burt & Sanders, Wilmington, for defendant, Kent General Hospital, (Inc.).

QUILLEN, Judge:

This is a malpractice suit against a surgeon and a hospital. The plaintiff has moved to strike the affirmative defense of the Statute of Limitations. Each defendant has moved for summary judgment. Because all motions deal with the same legal issue, they will be decided jointly.

For purposes of the defendants' motions the following facts must be accepted. In 1958, the defendant surgeon operated on plaintiff in Kent General Hospital, codefendant in this action. While the plaintiff was unconscious, the surgeon negligently left a hemostat in her body. The employees of the hospital negligently failed to account for the missing hemostat. Thereupon, the incision was closed and plaintiff recovered uneventfully. However, nine years later in 1965, she began to feel severe abdominal pains, which led to an emergency operation. The hemostat was discovered during this operation. It was also discovered that the hemostat caused bodily injury, which three subsequent operations were required to repair.

It is undisputed that plaintiff's first onset of pain was in 1965 and that reasonable care and diligence on the part of the plaintiff would not have led to the discovery of the hemostat prior to that time.

In 1966, plaintiff brought suit joining the surgeon and Kent General Hospital as codefendants.[1] Her complaint alleges that her injuries proximately resulted from the negligence of (1) the surgeon in leaving the hemostat in her body and (2) the hospital in that its employees failed to account properly for the hemostat used during the operation. Both defendants denied negligence and set up the Statute of Limitations as an affirmative defense. Plaintiff has moved to strike the affirmative defense under Superior Court Rule 12(b), Del.C.Ann. Each defendant has countered with a motion for summary judgment. As has been said, this opinion deals with all motions. The plaintiff's motion to strike is granted and the defendants' motions for summary judgment are denied.

The question is whether the Statute of Limitations runs from the date that the negligence occurred, or from the date that the negligence could reasonably have been discovered. In terms of the recited facts, the issue is whether the statutory period began as of 1958 (when the hemostat was left in the body) or in 1965 (the first onset of pain). If the Statute ran as of 1958, the action is barred, since the limitations period is two years. Conversely, if the Statute begins to run as of 1965, the action was timely, and the affirmative defense inadequate as a matter of law on the undisputed facts.

The relevant statute is 10 Del.C. § 8118, which provides as follows:

"No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained."

1. Mr. Thomas Edward Allen is joined as a party plaintiff with a claim for loss of consortium. But, for the purposes of this opinion, I will refer only to the plaintiff, Mrs. Anna Pearl Allen. The comments are, of course, equally applicable to the husband's derivative claim. Perez v. The Short Line, Inc. of Penn., 231 A.2d 642 (Del.Super.1967); Folk v. York-Shipley, Inc., 233 A.2d 451 (Del.Super., June 8, 1967).

The defendants contend that this statutory language unambiguously fixes the beginning of the statutory period at 1958. As authority, they rely upon the following Delaware cases: Lewis v. Pawnee Bill's Wild West Co., 6 Penn. 316, 66 A. 471 (Sup. Ct. 1907); Patterson v. Vincent, 5 Terry 442, 44 Del. 442, 61 A.2d 416 (Super.Ct. 1948); DiNorscia v. Tibbett, 11 Terry 118, 50 Del. 118, 124 A.2d 715 (Super.Ct.1956). Any hardship caused by the Statute, the defendants argue, must be corrected, if at all, by the Legislature.

Rather than being unambiguous, however, Section 8118 on its face appears susceptible of the two interpretations set forth in the briefs. Had Section 8118 dealt specifically with malpractice suits or been more specific otherwise [2], there would perhaps be less ambiguity. But the present Section 8118 does not specifically address itself to the issue at bar.

Moreover, the holdings in the cases cited by defendants do not support their proposition in the instant case. *Pawnee Bill* decided whether or not certain statutory exceptions should be incorporated into the predecessor of Section 8118. It did not decide that the statutory period began from the date of the negligent, undiscoverable act. The issue in *Patterson* was whether the Statute of Limitations for torts generally or the Statute of Limitations for personal injuries applied to its facts. *Patterson* did not deal with the issue at bar, because the plaintiff had stipulated that the statute ran from the date that an alleged poisonous compound was prescribed and not the date the injury was discovered. *DiNorscia* decided only that a counterclaim arising from the same transaction as the original claim was also subject to the Statute of Limitations. Hence none of these holdings are determinative of the pending issue. Admittedly, however, the spirit of

the *Pawnee Bill* case makes the plaintiff's contentions here more difficult, but it does not bar the consideration of the instant factual context as one of first impression.

Defendants next argue that Delaware law compels a statutory construction which effectively would bar this action. However, when applied to the present facts, defendants' authorities—Mastellone v. Argo Oil Corp., 6 Terry 517, 6 Del. 517, 76 A.2d 118 (Super.Ct. 1950), aff'd, 7 Terry 102, 46 Del. 102, 82 A.2d 379 (Sup.Ct. 1951) and Leibowitz v. Hicks, 207 A.2d 371 (Del.Ch. 1965)—are inconclusive.

The *Mastellone* case was a suit against a corporation for conversion. There the plaintiff alleged that the corporation had wrongfully transferred shares to the record owner, which actually belonged to the plaintiff as equitable owner. The plaintiff did not discover the transfer for twelve years thereafter. The Superior Court at 76 A.2d 121 upheld the defense of the Statute of Limitations, commenting that:

> "[I]gnorance of the facts * * * will not postpone the operation of the statute of limitations; and that the cause of action accrues when the wrongful transfer of stock is made."

But see the "well defined exceptions" listed by the Supreme Court at 82 A. 383 which include "concealment of the facts which would disclose the tort".

In the *Leibowitz* case the plaintiff sued the Register in Chancery for improper docketing of a claim in a receivership proceeding, which caused the plaintiff's claim to be forfeited as untimely. The mistake was not discovered for several years. The Court of Chancery, citing *Mastellone*, applied the Statute of Limitations.

Although *Mastellone* and *Leibowitz* cases appear to establish precedent that ignorance

2. See, for example, Mo.R.S.A. § 1016 cited in Thatcher v. DeTar, 351 Mo. 603, 173 S.W.2d 760, 761 (1943). " * * * [T]he cause of action shall not be deemed to accrue when the wrong is done or

the technical breach of * * * duty occurs, but when the damage resulting therefrom sustained and is capable of ascertainment." Note also Mo.R.S.A. § 1012 dealing expressly with malpractice.

of a wrongdoing does not justify tolling the Statute, it is still unclear whether these precedents should control these facts.

Preliminarily, different statutes are involved, the *Leibowitz* and *Mastellone* cases dealt with 10 Del.C. § 8104 and § 8106, respectively, and those statutes operate "from the accruing of the cause of such action". This case deals with Section 8118, which operates from the time "it is claimed that the injury was sustained." There are indications that these verbal formulae differ for reasons other than coincidence. Both statutes have been continuously re-enacted in substantially identical form, section 8106 since at least 1852, and section 8118 since 1897. See 1852 Code § 2742, 1915 Code § 4671, 1935 Code § 5129, 10 Del.C. § 8106; and 20 Del.Laws Ch. 594, § 1, 1915 Code § 4675, 1935 Code § 5133, and 10 Del.C. § 8118. It is arguable that continued insistence upon different verbal formulae reflects a legislative intent that the Statute of Limitations for personal injury operate differently from the statute governing general torts and wrongs committed by the Register in Chancery. But I place no reliance on this distinction which is emphasized in the plaintiff's brief other than to note we are dealing with a different statute than those dealt with in the *Mastellone* and *Leibowitz* cases.

Moreover, it is arguable that the wrongs committed in *Mastellone* and in *Leibowitz* were discoverable by diligent inquiry. The Court said this in *Leibowitz* at Del.Ch., 207 A.2d 374:

"Certainly, in the present case, inquiry by plaintiff would have disclosed the progress of the receivership proceeding and would have revealed that its claim failed of proof because of the Register's neglect of duty."

Likewise, in *Mastellone* it was possible for the plaintiff to have discovered the wrongful transfer. But no diligent plaintiff could have discovered a hemostat negligently left in her body. The result in *Mastellone*

would be ludicrous here. As Justice Musmanno remarked in a similar case, "[c]ertainly he could not open his abdomen like a door and look in." See Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788, 792 (Pa.1959).

Therefore, different statutory and factual considerations apparently distinguish this case from those cited above. But the Court cannot rest its decision on those grounds. It must find independent justification for decision favoring the plaintiff here. The Court finds the facts of the current case closely akin to an independently recognized legal doctrine, the principles of which should govern here.

■ The doctrine is the doctrine of fraudulent concealment. Fraudulent concealment is the intentional nondisclosure of material facts by one owing a duty to disclose. See 23 Am.Jur.Fraud and Deceit, § 578, p. 854. Ordinarily, the defrauding party must have knowledge of the facts concealed. If the surgeon here had known of the hemostat being left in plaintiff's body, he would have committed fraudulent concealment.

■ Where defendant is guilty of fraudulent concealment, the Statute of Limitations is tolled until such time as the cause of action is discovered or could have been discovered by the exercise of due diligence. See 2 Wood on Limitations, Ch. 26, p. 1358–9; 80 A.L.R.2d 401. This is a generally accepted legal principle in the Statute of Limitations context. Delaware has consistently followed this rule. Giordano v. Czerwinski, 216 A.2d 874 (Del.Sup.Ct. 1966); Bovay v. H. M. Byllesby & Co., 27 Del.Ch. 33, 29 A.2d 801 (Ch. 1943); Trainer v. Deemer, 5 W.W.Harr. 396, 35 Del. 396, 166 A. 657 (Super.Ct. 1933); Williams v. Beltz, 7 Boyce 360, 30 Del. 360, 107 A. 298 (Sup.Ct. 1919); Lieberman v. First National Bank of Wilmington, 2 Penn. 416, 8 Del. Ch. 519, 45 A. 901, 48 L.R.A. 514 (Sup.Ct. 1900). Recently, the Supreme Court has indicated its willingness to consider the

fraudulent concealment doctrine in malpractice cases.[3]

The rationale for this doctrine is to disallow a defendant from taking advantage of his own wrong in preventing a plaintiff from a timely suit in the courts. 34 Am. Jur., *Limitations of Actions*, § 231, p. 189. Using somewhat different language, the Supreme Court in the *Lieberman* case, supra, at 45 A. 903, also justified the fraudulent concealment doctrine on grounds of good conscience:

> "[I]f one by fraud conceals the fact of a right of action, it is not ingrafting an exception·on the statute to say that he is not protected thereby, but it is simply saying that he was never within the statute, since its protection was never designed for one such as he. By fraud, he has put himself out of its pale. Whether this be taken as an exception or only as a limitation of the statute, it rests upon sound reason and just policy."

■ Good conscience is no less an important consideration where malpractice is involved. Tolling the statute would remove the impossible burden of suing on an indiscoverable cause of action. Conversely, applying the statute would "punish the patient who relies on his doctor's advice and placed a premium on skepticism and mistrust." Johnson v. Caldwell, 371 Mich. 368, 123 N.W.2d 785, 791 (Mich.1963). Good conscience here requires the *Lieberman* result.

■ The Court reaches its result here by analogy to fraudulent concealment. When four independent factors are present in a suit by a patient against a surgeon or a hospital, the Statute of Limitations should run from the date the negligence could have been discovered by the exercise of due care and diligence. The four factors are: (1) there is a physical invasion of the body by a foreign object which is continuing in nature; (2) the continuing invasion is caused by the negligence of the defendant in performing surgery; (3) the negligence that permits the invasion is concealed by the very surgery in which the invasion occurs; and (4) there exists between the patient and the defendant a professional medical relationship. The concept could be expressed as the negligent surgical concealment of a foreign object.

However, the Court is not unaware of the obstacles, legal and otherwise, involved in introducing the principles of the fraudulent concealment case in a malpractice context. It therefore will attempt to test the result herein by the obstacles.

■ Not the least important of the obstacles is the difficulty that fraudulent concealment as such has not been alleged. Even if fraudulent concealment as such does not appear on the complaint, allegations of *scienter* and of a positive act of concealment are generally necessary. See Hudson v. Moore, 239 Ala. 130, 194 So. 147 (Ala.1940); 80 A.L.R.2d 368, § 10, p. 407. The problem would be different if the plaintiff had pleaded that the defendant knew of the hemostat left in her body and intentionally refused to disclose that fact. But such is not the case here. The complaint recites only acts of negligence on the part of the doctor and of the hospital. The most that could be implied is an allegation of negligent or unintentional concealment of the presence of the hemostat in plaintiff's body. The question then arises whether an allegation of negligent concealment of an injury caused by the negligence of a physician and the employees of a hospital suffices to invoke principles which correspond to those of fraudulent conceal-

3. In Brunozzi v. Munson, (Sup.Ct.No. 56, 1966—November 17, 1966), an unreported decision involving malpractice, the Supreme Court cited the *Giordano* case, supra, and said under the doctrine of fraudulent concealment that "the statute would be suspended until appellant discovered the wrongful act or could have done so by the exercise of due care and diligence." This case is 230 C.A.1965 in the Superior Court for New Castle County.

ment. The Court finds, that on these facts, the complaint is sufficient for that purpose.

The basis for so holding, unlike the classic case involving actual fraud, is neither malicious conduct nor wilful wrongdoing. On the contrary, surgeons and hospitals in cases of this type usually err in the best of faith. Rather, the basis in the context of surgery is the need to uphold the highest standard of care owed by the medical profession to its patients. That standard involves more than a description of the minimum quality of medical treatment. It includes the surgeon's and hospital's positive duty as a matter of trust to disclose to the patient all essential and significant facts. To allow the Statute of Limitations to be used as a bar to holding the surgeon and hospital accountable for breaching that high duty is necessarily to relax that standard. To do so is every bit as unfair as permitting a layman to set up the Statute after he has fraudulently concealed the plaintiff's cause of action. Stated another way, while negligent concealment by a medical professional is not fraud and while it does not help to call it fraud or constructive fraud, in cases such as the present one, the two should be equated for liability purposes. Where the highest trust standard of medical professional care in the surgical context must be upheld, conduct which is negligence, if judged by lay terms in other contexts, should, for limitations purposes, be considered by the same principles which govern fraudulent concealment. The greater rewards of professional life are unfortunately offset at times by its greater burdens. A double standard, applied differently to laymen and to professionals, is hardly a unique legal concept.

Although this case is evidently one of first impression in Delaware, the above reasoning is not foreign to other jurisdictions. When confronted with this issue, the Arizona Supreme Court held that:

" 'Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud' * * * Constructive fraud arises out of a fiduciary or confidential relationship * * * Fraud and deceit may arise from silence when there is a duty to speak the truth, as well as from the speaking of an untruth."

Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590, 595 (1948). On similar facts, the Arkansas Supreme Court has expressed the same idea:

"Appellee performed the operation upon appellant and knew, or by the exercise of ordinary care might have known, that the foreign substance was left remaining in her abdominal cavity. The information was thus known to appellee, was unknown to appellant, and the duty rested upon appellee to make known * * * all facts within his knowledge with reference to the injury. The cause of action alleged in appellant's complaint grows out of a breach of duty which the law implies from the physician and surgeon's employment in undertaking to perform the operation. It was a constant and daily obligation to use ordinary care and skill, and if by omission and negligence, he has left a foreign substance within the walls of the abdominal cavity at the operation, it behooved him to afford timely relief."

Burton v. Tribble, 189 Ark. 58, 70 S.W.2d 503, 504 (1934). Where the complaint alleged "negligent failure to inform", the Indiana Supreme Court found the allegation was sufficient with the following comment:

"Usually there must be some active effort on the part of one to be guilty of concealment but where a fiduciary or confidential relationship exists, such as physician-patient, there exists a duty to disclose material information between the parties, and a failure to do so results in concealment."

Guy v. Schuldt, 236 Ind. 101, 138 N.E.2d 891, 895 (1956). See also Rosane v. Senger, 112 Colo. 363, 149 P.2d 372 (1944); and

Hinkle v. Hargens, 76 S.D. 520, 81 N.W.2d 888 (1957), holding that negligent concealment of a cause of action coupled with a professional relationship, are sufficient to invoke the principles of fraudulent concealment. The Court adopts the reasoning of those cases in regard to the facts of this case.

Insofar as the limitations problem is concerned, and given the necessary assumption herein that the hospital was negligent, the same reasoning applies equally to the hospital, as to the surgeon. Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964); Morgan v. Grace Hospital, 149 W.Va. 783, 144 S.E.2d 156 (1965); Johnson v. St. Patrick's Hospital, 417 P.2d 469 (Mont.1966). Hospital employees are trained to assist surgeons in the course of an operation, and are under the surgeon's direction and control. Moreover, the patient entrusts the care of his body, and even his life, to the hospital, relying as much upon the skill of its employees as upon the skill of the surgeon. It can therefore be said that for the purposes of the operation upon plaintiff, the hospital also assumed a relation of trust and confidence with respect to her. The hospital's duty to disclose its negligence was no less than the doctor's. For limitations purposes, the negligent surgical concealment of a foreign object should also apply to the hospital. This decision makes no determination as to liability, and, particularly no determination as to the responsibility of the hospital vis-à-vis the surgeon and vice versa.

A second obstacle, of which the Court is aware, is the problem of stale evidence. To toll the Statute until such time as the injury could reasonably have been discovered, increases the possibility that defendants will be forced "to resist a claim [where] evidence has been lost, memories have faded, and witnesses have disappeared." See "Developments In The Law: Statutes of Limitations", 63 Harv.L.Rev. 1177, 1185 (1950). Stale evidence in this context refers to the defendants' difficulty in disproving at trial, that their operating procedures were negli-

gent. To do this requires witnesses. Witnesses might not be available at a trial so many years after the operation. To avoid this problem, it is hoped that hospitals and surgeons will develop a system of records which depicts in detail the procedure used in a given operation. If this is done, the risk of stale evidence will be minimized. "Balancing the equities, it is submitted that the injustice of denying innocently ignorant malpractice victims should override the policy of * * * security from stale claims." Note, "Statute of Limitations—Professional Negligence—Foreign Objects Left In Patient's Body", 17 Vand.L.Rev. 1577, 1578.

By so balancing the equities, this Court arrives at a result adopted by a majority of jurisdictions in this country. See Billings v. Sisters of Mercy of Idaho, supra, at 389 P.2d 232. Whether in terms of fraudulent concealment, continuing negligence, "discovery", or outright statutory construction, see Prosser, Torts p. 147 (3rd Ed. 1964), those jurisdictions have tolled the Statute of Limitations until the injury could have been discovered by the exercise of due diligence.

For cases dealing with the first two obstacles mentioned above, many of which go far beyond the holding herein, see Huysman v. Kirsch, 6 Cal.2d 302, 57 P.2d 908 (1936); City of Miami v. Brooks, 70 So.2d 306 (Fla.1954) (overdose of X-rays); Billings v. Sisters of Mercy of Idaho, supra; Waldman v. Rohrbaugh, 241 Md. 137, 215 A.2d 825 (1966); Johnson v. Caldwell, 371 Mich. 368, 123 N.W.2d 785 (1963); Thatcher v. DeTar, 351 Mo. 603, 173 S.W.2d 760 (1943); Johnson v. St. Patrick's Hospital, supra; Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961); Seitz v. Jones, 370 P.2d 300 (Okl.1961); Berry v. Branner, Or., 421 P.2d 996 (1966); Spath v. Morrow, 174 Neb. 38, 115 N.W.2d 581 (1962); Ayers v. Morgan, supra; Gaddis v. Smith, 417 S.W.2d 577 (Texas 1967); Morgan v. Grace Hospital, supra; Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (silicosis; decided under F.E.L.A.); Ric-

ciuti v. Voltarc Tubes, Inc., 277 F.2d 809 (2d Cir. 1960); Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5th Cir. 1965); Brush Beryllium Co. v. Meckley, 284 F.2d 797 (6th Cir. 1960). See also Prosser, Torts, (3rd Ed. 1964) p. 147, footnotes 56–60 for other cases. For commentary, see Prosser, supra, p. 147; "Developments In The Law; Statutes of Limitations", 63 Harv.L.Rev. 1177, 1205, 1222 (1950); "Statute of Limitations—Professional Negligence Foreign Objects Left In Patient's Body", 17 Vand.L.Rev. 1577 (1964); "Limitation of Actions—Medical Malpractice Statute Commences To Run When Injury Discovered", 5 Vill.L.Rev. 495 (1960); Cielinski, "Statute of Limitations in Malpractice Actions," 13 Clev.Mar.L.R. 313 (1964).

A final obstacle is the increased possibility of fraudulent claims. To be sure, every expanding legal doctrine to some extent imports that risk. But the risk is minimized where the fact situation underlying the doctrine is clearcut. Where a relationship of trust and confidence, such as surgeon-patient, is coupled with a concealed negligent surgical invasion of a foreign object, the risk of fraudulent claims is minimal. The particularity of these circumstances, and the multiplicity of these conditions eliminate the danger of belated, false claims. See Fernandi v. Strully, supra, at 173 A.2d 281.

It is perhaps useful for emphasis to return momentarily at this point to the defendants' reliance on the *Pawnee Bill* case and the admittedly troublesome argument that exceptions to the operation of the Statute of Limitations are for the Legislature. The answer is found in the language of the *Lieberman* case the Court quoted above. It is perhaps a matter of semantics to say that this decision is or is not "ingrafting an exception on the statute". This Court does say, however, and it points the innumerable authorities cited above in support of its position, that the negligent surgical concealment of a foreign object presents an unique limitations problem which, if resolved in favor of the defendants, would be so contrary to any normal concept of fairness that this Court refuses to attribute such an intention to the Legislature. The chief concern of the Court should not be focused on the artificial distinction of "whether this be taken as an exception or only as a limitation of the statute". Rather, the Court's decision should be based on "sound reason and just policy". Lieberman v. First National Bank of Wilmington, supra. This Court is convinced that this decision is so based.

For the reasons stated above, the Court grants the motion to strike the affirmative defense of the Statute of Limitations. Since the motions for summary judgment are grounded upon the alleged sufficiency of the Statute as a defense, those motions are denied.

It is so ordered.