Jerry SHIELDS, Peter Meyer, Grace Pierce–Beck, Charles Zencey, Edward Yalisove and Robert Moffett, Appellants,

v.

KEYSTONE COGENERATION SYSTEMS, INC.,

and

Department of Natural Resources and Environmental Control,

and

Coastal Zone Industrial Control Board, Appellees.

Civ. A. No. 91A–11–11.

Superior Court of Delaware, New Castle County.

Submitted: Dec. 19, 1991.
Decided: Dec. 27, 1991.

Robert Jacobs, of Jacobs & Crumplar, P.A., Wilmington, for appellants.

Richard E. Poole, of Potter Anderson & Corroon, Wilmington, for appellee Keystone Cogeneration Systems, Inc.

Keith A. Trostle, Deputy Atty. Gen., of Dept. of Justice for the State of Delaware, for appellee Dept. of Natural Resources and Environmental Control.

Marsha Kramarck, Deputy Atty. Gen., of Dept. of Justice for the State of Del., for appellee Coastal Zone Industrial Control Bd.

## OPINION

TAYLOR, Judge.

This decision resolves certain issues raised in the captioned appeal and in a related declaratory judgment case involving the application of Keystone Cogeneration Systems, Inc. [Keystone] for issuance of a Coastal Zone permit for construction of a pier and water intake facility on land within the State of Delaware extending from the boundary of New Jersey into the Delaware River. The proposed use is in conjunction with a proposed electric generation project to be constructed in Logan Township, New Jersey.

The permit was granted by the Secretary [Secretary] of the Department of Natural Resources and Environmental Control [DNREC] by Order dated August 19, 1991. Thereafter, members of the public appealed the Secretary's granting of the permit to the State Coastal Zone Industrial Control Board [Board]. The Board hearing was held before five of the nine members of the Board on October 22, 1991. On October 30, 1991 at a meeting attended by the five Board members who attended the hearing, four Board members voted to sustain the decision of the Secretary and one member voted to remand the matter to the Secretary for further consideration of certain

issues. The Board members present at that meeting noted in the minutes

> the Coastal Zone Act at 7 *Del.C.* § 7006 requires that a "final decision" may be reached only bye [sic] a majority of the Board members. The quorum for the Hearing was a simple majority of five members. The Board being unable to reach a unanimous decision, no "final decision" was reached.

On November 14, 1991, the Attorney General informed the parties by letter that the failure of the Board to reach a final decision allowed the Secretary to issue the permit. On November 20, 1991 the appellants filed this appeal. The parties agreed to an accelerated brief schedule terminating in the hearing on December 19, 1991.

The two issues before the Court at this stage are: (1) the standing of this appeal, and (2) the status of the Secretary's Order of August 19, 1991.

### I. A.

The Board's last action on this matter was taken on October 30, 1991; the minutes show that four Board members voted to sustain the decision of the Secretary and one member voted to remand the matter to the Secretary for further consideration. Only five of the nine Board members participated in the proceeding. The first consideration is the effect of that vote. 7 *Del.C.* § 7006 provides:

> Any member of the Board with a conflict of interest in a matter shall disqualify himself from consideration of that matter. A majority of the total membership of the Board less those disqualifying themselves shall constitute a quorum. A majority of the total membership of the Board shall be necessary to make a final decision on a permit request.

■ Keystone contends that the Board members who did not participate should be presumed to be disqualified and that only the non-disqualified members should be counted in determining whether a majority had voted to sustain the Secretary's decision. The record contains no indication that any of the four absent members were absent because of disqualification for conflict of interest. Experience with public agencies does not support an inference that a member's absence on a particular occasion is caused by disqualification. Therefore, it will be assumed that none of the four members who absented themselves from the hearing on October 22, 1991 and the Board meeting of October 30, 1991 had disqualified themselves because of conflict of interest.

■ Keystone also contends that the sentence which defines a quorum as a majority of the non-disqualified Board members is inconsistent with the following sentence, which requires a majority of the "total membership" to make a final decision. Keystone relies on *Wilson v. Texaco Refining & Marketing, Inc.*, Del.Super., C.A. No. 88A–MR–5, 1989 WL 89614, Poppiti, J. (ORDER) (Aug. 7, 1989), *aff'd* Del. Supr., 570 A.2d 1146 (1990), in support of the proposition that a majority of the quorum is sufficient to support an order of the Secretary. *Texaco* involved the attempted override of the Secretary's order granting a variance under the Environmental Control Act (7 *Del.C.* Ch. 60). That Act is a separate Act which was enacted in 1973 by 59 Del.Laws Ch. 212 (1973), subsequent to the Coastal Control Act, which was enacted in 1972 by 58 Del.Laws Ch. 175 (1972). *Texaco* involved the application of different statutory language from that involved here. However, like the language involved here, it involved a sentence which followed a sentence which defined a quorum. The sentences in *Texaco* read: "A simple majority of the Board shall constitute a quorum. A simple majority of the Board shall be required for overriding the decision of the Secretary." In *Texaco* both this Court and the Supreme Court held that the second sentence should be applied independently from the quorum sentence with the result that the latter sentence requiring a majority of the Board should be applied to the specific situation described in that sentence without reference to the quorum sentence.

With respect to the two sentences at issue, I do not find an irreconcilable inconsistency. The first sentence states a cus-

tomary method for determining a quorum which would apply in ordinary situations. The latter sentence provides a special requirement governing a final decision on a permit request. The Board is empowered "to hear appeals from decisions of the Secretary ... made under § 7005". Those decisions include certain regulations and a comprehensive plan and guidelines. 7 *Del.C.* § 7005(b) and (c). It is understandable that the legislators might provide a stricter standard for dealing with permits involving the application of the Act to a particular use of specific land than would be required for regulations and a comprehensive plan and guidelines. I conclude that the words "total membership" should be given the same meaning in both sentences, namely, meaning all non-disqualified members of the Board. Agreement of five Board members is needed to constitute the action of the Board on a permit request. Hence, there was no valid Board action in this matter.

### I. B.

■ Appellants at oral argument argued that since the Board action was not the action of five of the nine Board members, the Court should remand the matter to the Board for further action rather than accept this appeal. That proposal ignores that mandate of 7 *Del.C.* § 7007(b), which requires the Board to "hold a hearing and render its decision in the form of a final order within 60 days following receipt of the appeal notification." Although the date of receipt of the appeal notification does not appear in the Court's record, more than 60 days has passed since October 22, 1991, when the Board held its hearing. Therefore, any purported action by the Board at this time would fail to comply with the statute. It is not necessary for the Court to speculate about whether or not such action would be valid in view of the statutory mandate.

### II. A.

■ Appellants contend that this Court has no authority to entertain this appeal

because there is no final decision by the Board. 7 *Del.C.* § 7008 provides:

> Any person aggrieved by a final order of the [Board] under § 7007 of this title may appeal the Board's decision to the Superior Court....

Appellants' position, noted above, is that the Board should be commanded through a mandamus action to hold another hearing and reach a majority decision. This technical argument overlooks the fact that the Board is not confined to affirming or reversing the Secretary's decision but is empowered to modify any permit or grant a permit denied by the Secretary. In the exercise of its powers, each member of the Board is entitled to assert his or her own position concerning the granting or denial of a permit or the restrictions to be incorporated in the permit. In view of the variety of alternatives, a majority may not support one particular form of relief even if all members participate. In that case, the Court is called upon to resolve the appeal based on accepted principles.

In *Hopson v. McGinnes*, Del.Supr., 391 A.2d 187 (1978), the Supreme Court considered an appeal from a matter in which the State Personnel Commission had failed to obtain a majority vote involving discharge of an employee of the Division of Adult Corrections. The discharged employee appealed to this Court, and having lost in this Court appealed to the Supreme Court. The Supreme Court, recognizing that the customary appeal standard could not be applied in the absence of a majority decision by the Commission, held that the matter could be handled by this Court by making "its own findings based upon the record made before the Commission." 391 A.2d at 189.

### II. B.

■ Appellant also contends that the fact that 7 *Del.C.* § 7004(b) states that the Secretary and the Board must consider specified factors shows legislative intent that the permit could be issued only after both the Secretary and the Board have approved the granting of a permit. Section 7004 does not mandate such approval.

That provision merely requires that consideration "[i]n passing on permit requests". I do not find that such language locks the procedure for granting permits into a dual consideration or dual approval.

■ Appellants also direct attention to 7 *Del.C.* § 6007(c), which provides that in the event the appeal board fails to issue "the written opinion as required, the decision of the Secretary shall be a final decision for the purposes of appeal." Since no such provision appears in 7 *Del.C.* Ch. 70, appellants conclude that the result provided in 7 *Del.C.* § 6007(c) was not intended in Chapter 70. Chapter 60 was enacted in 1973, by 59 Del.Laws Chapter 212 (1973), two years after enactment of 7 *Del.C.* Ch. 70 by 58 Del.Laws Ch. 175 (1972). It is true that Chapter 60 is more meticulous than Chapter 70, but since Chapter 70 predated Chapter 60, I do not conclude the failure to specify the consequence of the failure of the Board to reach a decision indicates legislative intent that the permit is denied.

## II. C.

■ Appellants also contend that this Court cannot entertain this appeal on the ground that the action of the Board members does not qualify as a final order because it does not satisfy 29 *Del.C.* § 10128, which requires the Board decision to set forth a summary of the evidence, findings of fact based on the evidence and conclusions of law. Although it is true that those requirements are not satisfied, that is not fatal to this proceeding; under *Hopson v. McGinnes, supra,* upon failure of a Board to reach a majority decision, this Court may either remand the matter to the Board or entertain the matter and make a determination based on the record made at the administrative level.

## III. A.

■ Appellants contend that the appeal to the Board nullifies the Secretary's Order and that the Board's proceedings are *de novo.* Appellants cite *T.V. Spano Bldg. Corp. v. Wilson,* Del.Super., 584 A.2d 523 (1990) for the proposition that "where the Board is the initial hearing, all evidence must be taken and full fact finding must occur." *Spano* was an appeal from a Board decision in which it fully exercised its decision making powers. In *Spano,* the Secretary had not held a hearing because a condition of immediate danger existed. The language relied upon by appellants was used in *Spano* in response to a claim that the Secretary's action deprived the developer of property without due process. No such contention is made in this case. In contrast to *Spano,* in this instance, the Secretary in compliance with 7 *Del.C.* § 7005 held a public hearing on the Keystone request for permit. Therefore, any due process requirement has been satisfied.

The only precedent which appellants cite for their contention that each successive step of the appeal process requires a new hearing is the procedure followed in appeals to this Court from decisions rendered by the Justice of the Peace Court. 10 *Del.C.* § 9573, which describes the proceedings on appeal from the Justice of the Peace Court, provides:

> When the appeal is entered, the Superior Court shall have jurisdiction and take cognizance thereof, and the pleadings and proceedings thereafter shall be as in other civil actions commenced in the Court, except as otherwise provided in this section.

Language to the same effect appears in statute form as far back as the Delaware Code of 1852 § 2142. The Delaware Court of Errors and Appeals, in *Waples v. Gum,* 5 Del. 404, 5 Harr. 404 (1853), states that the Delaware Constitution of 1792, by providing "that jury trial shall be as heretofore, gave the appeal and placed the case in the Superior Court, as an original case."

Appellants argue that where a statute provides for successive public hearings before different bodies, each successive hearing must be *de novo.* They apparently use the term *de novo* to mean that the appeal and holding of the hearing nullifies the decision made at the earlier stage. The only Delaware case appellants cite is *Wyatt v. Tam,* Del.Super., 16 Del. 370, 43 A. 257 (1894), which applied the term *de novo* in referring to an appeal from the Justice of

the Peace Court applying the statutory requirement discussed above.

Nowhere in 7 *Del.C.* Ch. 70 does the term *de novo* appear. Section 7007 gives the Board the power to hear appeals from the decision of the Secretary. It gives the Board the power to affirm or reverse the Secretary's decision, and to modify any permit granted by the Secretary, grant a permit denied by the Secretary or deny a permit or confirm his grant of a permit. The use of the phrases "modify any permit granted by the Secretary" and "confirm his [the Secretary's] grant of a permit" is inconsistent with the concept that the appeal nullifies the permit appealed from. It recognizes that the Secretary's decision continues to exist after appeal, but that it may be overridden by the decision of the Board. Applying this conclusion, the Secretary's decision or permit remains in effect unless the Board takes some contrary action overriding the Secretary's action.

Appellants cite *Lohrmann v. Arundel Corp.*, 65 Md.App. 309, 500 A.2d 344 (1985); and *REA Enterprises v. California Coastal Zone Commission*, 52 Cal.App.3d 596, 125 Cal.Rptr. 201 (1975) in support of the contention that the appeal to the Board here must be treated as a *de novo* proceeding. Both cases involve the application of statutes which provide that the appeal must have a *de novo* hearing. The Delaware statute requires a public hearing but does not specify a *de novo* hearing. Therefore, those cases are not persuasive that the Delaware public hearing must be a *de novo* hearing.

### III.  B.

■ Appellants also contend that the ultimate power to issue permits rests with the Board. This is not in harmony with the statute. Section 7005(a) designates DNREC as the agency to administer the Coastal Zone Act. From its context, the Secretary is the person who administers the several functions under the Coastal Zone Act, including appealing decisions of the Board and bringing condemnation proceedings.

### III.  C.

■ Appellants contend that if this Court retains the matter, it cannot review the record made by the Board and Secretary but must hold a new public hearing. Appellants cite no authority for this contention. The procedure authorized by the Supreme Court in *Hopson, supra*, is a realistic solution to a situation where the statutory procedure has failed. *Hopson* did not address the mechanics of the substitute procedure. The Court in *Hopson* noted that the standard usually applied to administrative appeals would not be used because there was no Board decision to be reviewed. Apparently the Supreme Court intended that the Superior Court could make its own determination.

In the present case, two public hearings have been held, one by the Secretary and the other by the Board. Under the Administrative Procedures Act, public hearings to be held before the administrator or Board can also be held before a subordinate designated by the agency for that purpose. 29 *Del.C.* §§ 10117, 10125. Under that pattern, the members who are called upon to make the decision are not required to be present at the hearing. Therefore, the record made at the prior hearings in this case should be a sufficient record upon which the Court could make its decision in accordance with *Hopson* without holding a new hearing.

### IV.

In conclusion, the Court finds that the vote of four members of the nine member Board on the subject of the Keystone permit was not a valid decision of the Board; that in view of the failure of the Board to render a valid decision this Court has jurisdiction to entertain this appeal; and that this Court has the power to render a decision based on the record of the public hearings heretofore held on the Keystone application.