JOHNSON v. CALDWELL.

1. TRIAL—CHANGE OF THEORY—TORTS—CONTRACTS.

A change of theory of a case occurs when an amended declaration, containing an assumpsit count, was properly permitted when leave to file such declaration was granted without of-record ob-jection before trial in action which had been commenced by declaration limited to a count in trespass based on negligence.

2. PHYSICIANS AND SURGEONS—CONTRACTS—CHILDBIRTH.

A contractual relationship was prima facie established between plaintiffs, husband and wife, and defendant physician upon latter's agreement to treat plaintiff wife during pregnancy, delivery of the baby, and for *post partum* treatment.

3. SAME—NEGLIGENCE—EVIDENCE—PROLAPSED UTERUS.

Evidence that defendant physician had advised plaintiff woman following birth of her first child that nothing could be done for her condition which was later corrected by operations for a prolapsed uterus *held*, substantial evidence of defendant's neg-ligence.

4. APPEAL AND ERROR—MALPRACTICE—FINDINGS OF FACT—GREAT WEIGHT OF EVIDENCE.

The Supreme Court must accept a jury's finding on issues of fact presented in a malpractice case, where there was sup-porting testimony for both plaintiffs and defendant and the

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 41 Am Jur, Physicians and Surgeons §§ 70, 71.
[4] 5 Am Jur 2d, Appeal and Error § 833.
[5–8] 41 Am Jur, Physicians and Surgeons § 123.
   When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.
[8] 41 Am Jur, Pleading §§ 288–308.
[9] 41 Am Jur, Physicians and Surgeons § 78 *et seq.*, §§ 133, 134.
[10] 41 Am Jur, Physicians and Surgeons.§§ 119, 120, 132.
[11] 41 Am Jur, Physicians and Surgeons §§ 133, 134.

findings cannot be said to be against the great weight of the evidence.

5. PHYSICIANS AND SURGEONS—MALPRACTICE—STATUTE OF LIMITATIONS—DISCOVERY BY PATIENT OF WRONGFUL ACT.

The statute of limitations in malpractice cases does not begin to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act, a rule which is not to be confused with the completely distinct concept of fraudulent concealment as to which there is an express statute (CLS 1956, § 609.13; CL 1948, § 609.20).

6. SAME — MALPRACTICE — STATUTE OF LIMITATIONS — LAST TREATMENT.

The so-called last-treatment rule in applying the statute of limitations in malpractice cases may result in grave inequities if the patient relies upon the physician's advice that constitutes the malpractice (CLS 1956, § 609.13).

7. LIMITATION OF ACTIONS—MALPRACTICE.

Determination as to which of 3 periods of limitation within which plaintiffs, husband and wife, suing physician on contract and in tort for malpractice, is not made, where actions were commenced within 2 years, the shortest period, of discovery of the defendant's wrongful act (CLS 1956, § 609.13).

8. SAME—AMENDMENT OF PLEADING—PREJUDICE.

Defendant physician was not prejudiced by amendment to declaration adding counts in assumpsit to declarations in trespass based on negligence on his part in treating plaintiff wife, where the most restrictive of the 3 possible periods of limitation upon their causes of action had not yet run when their original declarations were filed (CLS 1956, § 609.13).

9. PHYSICIANS AND SURGEONS—MALPRACTICE—CONTRACTS—DAMAGES.

Malpractice by a physician is predicated upon the failure to exercise requisite medical skill, is tortious in nature, and damages recoverable are for personal injuries, including pain and suffering which naturally flow from the tortious act, whereas an action in contract is based upon a failure to perform a special agreement for breach of which the damages are limited to the payments made and to the expenditures for nurses and medicines or other damages that flow from the breach thereof.

10. SAME—CONTRACTS—PREJUDICE—SUBMISSION OF ISSUES TO JURY.

Submission of cases against physician for failure to give proper *post partum* treatment to plaintiff wife on theory of breach of contract alone *held*, not prejudicial to defendant under

instructions given, and issue of prejudice to plaintiffs, husband and wife, because of such limitation on submission of issues is not before the Supreme Court in absence of cross appeal.

11. Same—Post Partum Treatment—Damages—Evidence.

Verdicts and judgments of $1,400 to husband and $2,600 to wife in their actions against defendant physician for failure to give proper *post partum* treatment to plaintiff wife are not disturbed, where well within the range of testimony on damages on either the contract or tort theory.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted May 8, 1963. (Calendar Nos. 44, 45, Docket Nos. 49,896, 49,897.) Decided October 10, 1963. Rehearing denied November 7, 1963.

Consolidated actions by Alberta Johnson and Nathaniel Johnson against G. L. Caldwell, M.D., with counts in contract and in tort for malpractice. Verdicts and judgments for plaintiffs. Defendant appeals. Affirmed.

*Zeff & Zeff* (*Edward Grebs,* of counsel), for plaintiffs.

*Cronin & Cronin* (*Burton H. Cronin,* of counsel), for defendant.

O'Hara, J. On review here is the order of the trial court denying motions for new trials and for judgments *non obstantibus veredictis.*

The judgments are upon a consolidation of 2 suits for trial. One is by Nathaniel Johnson for loss of consortium and for expense incurred by him for medical services rendered to his wife. The other is by the wife, Alberta Johnson, in her own name, for pain, suffering, and permanent injury to her nervous system.

The declarations initiating the actions, as originally filed on January 27, 1959, both contained single counts. Both were trespass actions alleging negli-

gence on the part of defendant doctor. Each claimed damages of $20,000.

To these declarations were filed answers on February 13 and 17, 1959, respectively. Each answer specified that it was filed subject to a "special defense" contained therein. The defense was the statute of limitations and the particular limitation cited was PA 1915, No 314, ch 9, § 13, subd 3, as amended by PA 1951, No 21 (CLS 1956, § 609.13 [Stat Ann 1959 Cum Supp § 27.605]), which provides that:

"3. Actions * * * for malpractice of physicians * * * shall be brought within 2 years from the time the cause for action accrues and not afterwards."[1]

Each answer is accompanied by a demand for trial by jury. The list of calendar entries shows a "reply to special defense" filed February 19, 1959, and a "praecipe for causes ready for trial (No 110,184)" filed February 20, 1959.

Thereafter a substitution of attorneys was made and amended declarations were filed on motion and order granting leave so to do. The amended declarations were in 2 counts filed May 4, 1961. Count one was designated "trespass on case"; count 2, "assumpsit." The *ad damnum* clauses were both increased to $50,000. To these amended declarations the only responsive pleading shown in either appendix is a "demand for bill of particulars." The answer to this demand is entitled in appellant's appendix "answer to interrogatories." No further reference is made to the amended declarations containing the assumpit count in any pleading. The

---

[1] And see RJA, PA 1961, No 236, § 5805 (CLS 1961, § 600.5805 [Stat Ann 1963 Rev § 27A.5805]) for current language: "No person may bring or maintain any action to recover damages for injuries * * * unless, after the claim first accrued to himself * * * he commences the action within the periods of time prescribed by this section * * * (3) The period of limitation is 2 years for actions charging malpractice."

pretrial statement contains only this reference thereto:

"Defendant also claims that the statute of limitations has run on the plaintiffs' claim."

From what is before us in the appendices it is difficult to ascertain what appellant's claim, as set forth in the third statement of questions involved, actually means:

"3. Did the court err in permitting plaintiffs to change their theory of the case after the proofs were in from malpractice to contract?

"Plaintiffs and appellees say, 'No.'

"Defendant and appellant says, 'Yes.' "

The list of calendar entries shows an order entered on May 12, 1961, granting motion for leave to amend declarations. No objection thereto is listed as having been made.

Both the tort and assumpsit counts, apparently, were properly before the court at the beginning of the trial. At the close of plaintiffs' cases defendant moved for a directed verdict in the following terms:

"*Mr. Cronin*: The defendant at this time moves for a directed verdict in his favor for the following reasons:

"There has been no evidence presented in this case to bring it within the fraudulent concealment statute. Moreover, the pleadings do not contain an allegation of fraudulent concealment. It is not pleaded in the pleadings. There is no allegation of fraudulent concealment in the pleadings that could toll the operation or running of the regular statute."

The court made the following ruling:

"*The Court*: The motion for directed verdict is denied, but I will grant the motion as to striking the *count on malpractice*. I am not striking the assumpsit count. That has 6 years to run." (Emphasis supplied.)

Thereupon defendant put in his proofs and when both parties rested, defendant again made a motion for a directed verdict:

"*Mr. Cronin*: The defendant moves at this time, may it please the court, for a directed verdict in his favor for the following reasons, to-wit:

"First, there has been no proof offered in respect to a special agreement in this case. There has been no allegation in the pleadings of a special agreement on the part of the doctor, and the statute of limitations has run against this case. The count in respect to malpractice has been dismissed by the court.

"There has been no evidence produced in this case to show any breach of contract under the law of contracts, none whatever. Another ground is because the plaintiff is attempting to change his theory of the case in the middle of a lawsuit. In fact, after he closed his case all the evidence adduced in this case has been on the skill or lack of skill, which is the realm of malpractice, and after the evidence is all in plaintiff may not change his theory of the lawsuit. You can't change the theory in the middle of a lawsuit."

Following is the court's ruling:

"*The Court*: Let the record show that the count of malpractice has been dismissed by the court because under the law the action must be brought within 2 years after the malpractice, and it was not brought within the time permitted by statute in this case. It was brought after 2 years so the court had to exclude the malpractice count, but counsel has a right to go to the jury on the assumpsit or contract count."

So far as we can determine plaintiffs' change of theory took place at the time the amended declarations were filed—without of-record objection. Early in the direct examination of plaintiff-wife the basis

of the contractual relationship was prima facie established and not thereafter challenged. Her testimony was as follows:

"*Q.* And when you saw Dr. Caldwell was anybody with you?

"*A.* My husband.

"*Q.* And at the time you saw Dr. Caldwell, Mrs. Johnson, would you tell us the conversation, or the nature of the conversation that you had with him at that time?

"*A.* Well, at that time my husband wanted him to treat me prior to my baby, and deliver the baby and treat me afterward, and he agreed that he would."

We do not think it necessary to consider this allegation of error further. The additional questions raised by appellant are:

(1) The holding that the 6-year limitation of action applied rather than the specific 2-year malpractice statute.

(2) That there was not adduced sufficient evidence to create a jury question on either the tort or contract theory.

(3) The denial of the motion for a directed verdict at the close of plaintiffs' case.

(4) The denial of the motions for a new trial or judgments notwithstanding the verdicts.

We have considered each question raised but we are constrained to agree with the statement in appellant's brief:

"The central question in these cases is the statute of limitations."

The verdicts, if properly rendered, are well within the range of the evidence on damages. For the husband the jury returned a verdict of $1,400; for the wife $2,600.

The facts and allegations of fact necessary to an understanding of the legal issues are hereinafter set forth.

Plaintiff Alberta Johnson, at the time of her initial consultation with Dr. Caldwell, was 21 years of age. She was in the fourth month of her first pregnancy. On the call to engage Dr. Caldwell she was accompanied by her husband. The professional engagement of Dr. Caldwell for these purposes is not disputed. The date was the latter part of August, 1955. The baby was normally delivered without incident on December 29, 1955. Mrs. Johnson was discharged from the hospital January 2, 1956. In the interim, between birth and discharge, plaintiff-mother testified the doctor visited her in the hospital "almost every day" and that he examined her before she left the hospital. She testified further that he advised her that she had an infection of the womb. When she arrived at home, she noticed that "I had something which seemed to be protruding through my vagina." She returned to the doctor before the 6 weeks after-birth period he had recommended for another examination and complained of the condition. According to plaintiff, the doctor advised her to wait until the 6 weeks were up and he "would see." Thereafter she testified that she went back to see him again; that he told her nothing could be done for her condition; that she would have to learn to live with it and take remedial exercise; further, that for 2 years she was in intense pain, unable to have conjugal relations, and that her marriage was imperiled. In 1957 she was admitted to another hospital under the care of a staff physician because her husband was unemployed; a registered nurse observed her condition and recommended she consult a doctor. After consultation and examination, the doctor performed 2 corrective operations for a prolapsed uterus. After that her condition

improved and as of the time of trial she was "fine." Significantly for the issue framed in this case, she testified on cross-examination:

"*Q.* Well, from June, 1956, to February, 1958, you continued to suffer all that time?

"*A.* That is right.

"*Q.* And acting on Dr. Caldwell's advice to you that an operation wouldn't do any good you didn't seek any other medical care?

"*A.* I accepted his word. He says nothing could be done for it."

Dr. Caldwell, contrariwise, asserts basically that in his opinion the *post partum* examination did not reveal a prolapsed uterus but rather a relaxed perineum or a subinvaluted uterus; that it was too early at the time he last examined plaintiff-mother to determine whether the condition was properly operable or self-correctable. He denied that he told her that her condition was one she would "have to live with." He contends nothing symptom-wise at the time of his last examination suggested surgery and that he advised her that if the condition worsened to return for further treatment. He claims that in the 2 years before the corrective surgery was performed she never returned nor consulted him. Of these disputed fact questions, we can make no review. Each version of the facts stands upon the assertion of the proponent thereof. The constitutionally guaranteed jury trial of those questions was resolved in plaintiffs' favor. The finding cannot be said to be against the great weight of the evidence. There was no error in this facet of the findings of fact.

The medical experts were eminently fair. Dr. Crook, who performed the uterian suspension called by defendant, conceded that if the condition were as Dr. Caldwell described it, he (Dr. Caldwell) had

done "nothing wrong," but that if plaintiff's version were correct, the condition could only worsen and that surgery was indicated. He pointed out the obvious fact that he could not testify to plaintiff's condition 2 years before he saw her.

Dr. Walkowiak, one of defendant's medical witnesses, testified that to advise a woman with the symptoms plaintiff alleges she had that "nothing can be done" would not be "standard medical practice." Dr. Lasichak agreed that if plaintiff's symptoms were as she described them that it would not be proper medically to advise her that her condition would not get better and that she would have to "live with it."

When the issue which we have declared to be determinative was framed, the statutes of limitations as they applied to these facts became applicable. The court limited plaintiff's proofs to the events prior to June, 1956. This was on the theory that under the pleadings, the answer to written interrogatories, and the pretrial statement, plaintiff last consulted defendant Dr. Caldwell in June, *1956*. On trial she contended it was June, *1957*.

This ruling was properly made on the basis of the prior rulings of this Court. In *De Haan* v. *Winter*, 258 Mich 293, 296, Mr. Justice WIEST, for a unanimous court held:

"When did plaintiff's cause of action accrue? Until treatment of the fracture ceased the relation of patient and physician continued, and the statute of limitations did not run."

In the opinion, however, the writing Justice noted:

"While decisions are not in accord upon this question, we are satisfied that in such an action [malpractice] as this the statute of limitations does not commence to run while treatment of the fracture continues." *De Haan, supra, p 296.*

Discussion of this holding was had in both *Buchanan* v. *Kull*, 323 Mich 381, and *Draws* v. *Levin*, 332 Mich 447. Both of these cases, however, had the additional question of fraudulent concealment which is not involved in the case at bar. The question we face here was precisely stated by Mr. Justice Souris in *Eschenbacher* v. *Hier*, 363 Mich 676, at p 683:

"Defendant contends that our Court has determined a cause of action for malpractice accrues at the time of last treatment by the physician.  *  *  *  Plaintiff, on the other hand, insists that in malpractice cases the cause of action accrues only upon discovery by the patient that he has a cause of action."

Our ruling there, however, did not settle the question. Resuming from *Eschenbacher* v. *Hier, supra,* at p 684, Mr. Justice Souris made clear that the question was reserved:

"We feel compelled to limit our application here of *the last treatment rule* to the facts of this case.  *  *  *  By so saying, we reserve for future consideration applicability of the discovery rule urged upon us by plaintiff." (Emphasis supplied.)

The able and experienced trial judge, on the basis of the holding in *De Haan, supra,* which was at least obliquely approved in *Buchanan* and *Draws, supra,* was justified in his ruling under the above mentioned precedent. However, under the reservation hereinbefore quoted from *Eschenbacher, supra,* we now re-examine the last treatment rule as determinative of the time of the accrual of the cause of action and the correlative time when the limitation statute or statutes begin to run.

As observed in *Buchanan, supra,* by quotation from *De Haan, supra,* judicial unanimity was lacking on the last treatment rule nationwide, in 1949. The trend since that time has been toward what may, for identification purpose, be designated the

"discovery rule." This rule is not to be confused with the completely distinct concept of fraudulent concealment, which is the subject of an express statute[2] which has often been construed. This we here do not disturb. Simply and clearly stated the discovery rule is: The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act. See *Greninger* v. *Fischer,* 81 Cal App2d 549, 553, (184 P2d 694, 696), and for more general discussion, 41 Am Jur, Physicians and Surgeons, § 120, pp 230, 231. The rule was examined extensively in *Ayers* v. *Morgan* (1959), 397 Pa 282 (154 A2d 788). We are persuaded we should adopt the rationale of the discovery doctrine.

The grave inequities which could follow the application of the last treatment rule are well illustrated by the case at bar. Plaintiff testified, as pointed out earlier, "I accepted his [defendant's] word [that] nothing could be done for it." As phrased in *Ayers* v. *Morgan, supra,* p 285, it would be "illogical and unintelligent" to require a patient to determine on the date he last consults a physician that malpractice has taken place, when he in fact relies upon the advice that constitutes the malpractice. So to hold would punish the patient who relies upon his doctor's advice and places a premium on skepticism and distrust.

Plaintiff, a 21-year-old girl, delivered of her first child and experiencing *post partum* difficulty relied

[2] CLS 1956, § 609.20 (Stat Ann 1959 Cum Supp § 27.612):
"If any person, who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action, or conceal the identity of any party thereto, from the knowledge of the person entitled thereto, the action may be commenced at any time within 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter."
And see PA 1961, No 236, § 5855 (CLS 1961, § 600.5855 [Stat Ann 1963 Rev § 27A.5855]), for present phraseology.

on what the trier of the facts determined to be the doctor's advice that "nothing could be done about it." She could not, under the circumstances disclosed by this record, be held to have known, nor could she, by the exercise of reasonable diligence, have been expected to know of the claimed malpractice until she was hospitalized for unrelated pneumonia 2 years later. Then it was suggested by one presumably knowledgeable that she consult another doctor. The record is not explicit as to the exact dates of this second hospitalization, referring to it as the "latter part of 1957 over into 1958." However, without untoward delay she consulted Dr. Crook in January, 1958, and it was at this time she became obligationally aware of the fact of the alleged improper advice which was the basis of her cause of action. At this time the statute of limitations began to run in favor of defendant-doctor and against plaintiff's right of action. Appellant raises the question as to which of the 3 limiting statutes[3] was controlling of plaintiffs-appellees' right of action. By reason of the application of the discovery rule to the facts it becomes unnecessary to decide and we do not decide here that question.

The original declarations of 1 count sounding only in negligence were filed January 27, 1959; the cause of action arose in February, 1958. Since the most restrictive of the limitations would not yet have run, no prejudice to defendant could possibly have arisen

---

[3] The 3 periods of limitation applicable are as follows:

CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605):

"Sec. 13. All actions in any of the courts of this State shall be commenced within 6 years next after the causes of action shall accrue, and not afterward, except as hereinafter specified: Provided, however, * * *

"2. Actions to recover damages for injuries to person or property and actions for trespass upon lands shall be brought within 3 years from the time said actions accrue, and not afterwards:

"3. Actions * * * for malpractice of physicians, surgeons or dentists, * * * shall be brought within 2 years from the time the cause for action accrues, and not afterwards."

by reason of the allowance of the amendments adding the counts in assumpsit based upon the longer limitation periods.

In view of our holding that plaintiffs' causes of action in negligence (malpractice) were not here barred by the statute of limitations, the query next arises whether the submission of the case to the jury by the trial court on the assumpsit (breach of contract) count only was reversibly erroneous.

As we noted in *Stewart* v. *Rudner,* 349 Mich 459, at p 468, and as was mentioned by the trial judge in his denial of defendant's motion for a directed verdict:

"The 2 causes of action are dissimilar as to theory, proof and damages recoverable. Malpractice is predicated upon the failure to exercise requisite medical skill and is tortious in nature. The action in contract is based upon a failure to perform a special agreement. Negligence, the basis of the one, is foreign to the other. The damages recoverable in malpractice are for personal injuries, including the pain and suffering which naturally flow from the tortious act. In the contract action they are restricted to the payments made and to the expenditures for nurses and medicines *or other damages that flow from the breach thereof.*" (Emphasis supplied.)

The precise question is:

Where plaintiff had a right to go to the jury on either the tort or contract count and her case was submitted on the contract count alone, was defendant-appellant (there being no cross-appeal) prejudiced by submission of the case on the breach of contract theory only?

We apprehend defendant-appellant was in no wise prejudiced thereby. Defendant can hardly be heard to complain of his prevailing upon the motion to dismiss the tort count, thus limiting the jury's con-

sideration to the assumpsit count. We feel the trial court, in his opinion on defendant's motion *non obstante veredicto* and for a new trial, adequately and properly answered defendant's complaint of failure to instruct the jury on the elements of the contract and the breach thereof.

If the submission of the case to the jury on the contract count alone inured to the prejudice of any one, it was to plaintiffs, and since no cross-appeal was taken that issue is not before us.

The amounts of the judgments do not merit serious discussion. They were well within the range of the testimony on damages on either theory.

For the reasons hereinbefore detailed, the order of the trial court denying defendant's motions for directed verdicts and for judgments notwithstanding the verdicts are affirmed.

Appellees may have costs.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred.