WEAVER, J.
(dissenting). I dissent from the majority’s conclusion that MCL 600.5827 exclusively governs the *408 time of accrual of plaintiffs claims. I would affirm the Court of Appeals decision applying the common-law “discovery rule,”[1] which operates to toll the statutory period of limitations when a plaintiff could not have reasonably discovered the elements of a cause of action within the limitations period.
Further, I concur with Justice KELLY that under the test set forth in Robinson v Detroit,[2] the discovery rule “has become so embedded, so accepted, so fundamental, to everyone’s expectations that to change it would produce not just readjustments, but practical real-world dislocations.”[3]
FACTS
In 1981, Dr. Margarette Eby moved to Flint, Michigan, and began leasing a two-story gatehouse located near the entrance to the Ruth R. Mott estate (Mott Estate). Evidently Mrs. Mott lived a hermitic lifestyle on the Mott Estate grounds known as “Applewood.” Virtually all her personal dealings were handled by the Mott Family Office (MFO).[4]
The gatehouse was remotely located some distance from Mrs. Mott’s home, and the gatehouse basement contained the valves and piping that supported the sprinkler system for the entire Mott Estate grounds. In January 1985, Dr. Eby complained to Mrs. Mott about break-ins she experienced at the gatehouse, including an incident on January 23, 1985, during which Dr. Eby’s compact disc player and purse were stolen. Paul Yager, *409 then the chief executive officer of MFO, responded to Dr. Eby’s complaint on behalf of Mrs. Mott. In response to Dr. Eby’s complaint and her request for installation of a security alarm system, Mrs. Mott had new deadbolt locks installed. No alarm system was installed.
Nearly two years later, late in the evening on November 7, 1986, Dr. Eby returned to the gatehouse after a dinner party. Two friends accompanied her to the gatehouse door and waited until she was safely inside before departing. Two days later, Dr. Eby was found dead in the gatehouse. She had been attacked, raped, and knifed to death. The police investigation of Dr. Eby’s death focused primarily on persons who might have been known to Dr. Eby because there appeared to be no sign of forced entry. Police interviewed a number of suspicious persons, but there was never any evidence developed that implicated those persons in Dr. Eby’s death. The evidence collected included deoxyribonucleic acid (DNA) evidence (semen) from Dr. Eby’s body, as well as a partial fingerprint from a faucet inside the gatehouse.
In 1991, Nancy Ludwig, an airline attendant, was attacked, raped, and knifed to death in a hotel near the Detroit Metropolitan Airport. The circumstances surrounding her death were strikingly similar to Dr. Eby’s, and at the request of Dr. Eby’s son, the police reopened the investigation into Dr. Eby’s death. After additional DNA testing on evidence collected from both victims, and after comparing fingerprints left at both crime scenes, investigators were able to determine that Jeffrey Gorton committed both murders.[5]
*410 Before Dr. Eby’s death in 1986, Jeffrey Gorton was an employee of Buckler Automatic Lawn Sprinkler Company (Buckler), which serviced the Mott Estate’s sprinkler system. Buckler was owned by Jeffrey Gorton’s parents, Laurence and Shirley Gorton. Jeffrey Gorton was provided access to the sprinkler system controls housed in the gatehouse basement through Mott Estate staff members Victor Nyberg and Todd Bakos, both allegedly employed by MFO.
On August 2, 2002, six months after discovering the identity of Dr. Eby’s murderer through the arrest of Gorton, plaintiff Dayle Trentadue, daughter of Dr. Eby and personal representative for the estate of Margarette F. Eby (estate of Eby), filed a wrongful death complaint against multiple defendants. The defendants included Buckler, its owners Laurence and Shirley Gorton, Jeffrey Gorton, Ruth Mott, MFO, and MFO employees Nyberg and Bakos. The complaint alleged, among other things, negligent hiring and negligent supervision of Dr. Eby’s killer, Jeffrey Gorton.[6]
With regard to her claims against the Mott Estate, MFO, and Nyberg and Bakos for negligent hiring and negligent supervision, plaintiff alleged that on November 5, 1986, MFO employees Nyberg and Bakos provided Gorton with unsupervised access to the gatehouse *411 basement to winterize the sprinklers and that it was by this means that Gorton was subsequently able to come back on November 7 to attack and kill Dr. Eby.[7] Moreover, despite Dr. Eby’s earlier and repeated requests to defendants Ruth Mott and MFO to improve the security of the gatehouse, plaintiff alleged that defendants were negligent in failing to provide adequate security, thereby permitting Jeffrey Gorton’s access to the gatehouse.
All defendants filed motions for summary disposition, but the circuit court granted summary disposition only to defendants Mott and MFO, and only on one count (count VIII, which alleged that the premises were unsafe). The parties appealed, and the Court of Appeals reversed the summary disposition for MFO on count VIII, affirmed in all other respects, and remanded the matter to the circuit court for further proceedings.[8] In so ruling, the Court of Appeals concluded that the discovery rule tolled the period of limitations because plaintiff had no basis to assert claims against any defendant until the murderer’s culpability was discovered.
Defendants appealed, and we granted leave, directing the parties to include among the issues to be briefed:
[WJhether the Court of Appeals application of a common-law discovery rule to determine when plaintiffs claims accrued is inconsistent with or contravenes MCL 600.5827, and whether previous decisions of this Court, which have recognized and applied such a rule when MCL 600.5827 would *412 otherwise control, should be overruled. [Trentadue v Buckler Automatic Laum Sprinkler Co, 475 Mich 906 (2006).]
ANALYSIS
MCL 600.5805(10) provides that in wrongful death actions, “[t]he period of limitations is 3 years after the time of the death or injury ... to recover damages for the death of a person. . . .” Further, MCL 600.5827 states:
Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.
Both of these provisions appear in the Revised Judicature Act, MCL 600.5801 et seq., in chapter 58, the chapter entitled “Limitation of Actions.” The policy considerations behind the enactment of statutes of limitations were noted by this Court in Lothian v Detroit:[9]
They encourage the prompt recovery of damages, Buzzn v Muncey Cartage Co, 248 Mich 64, 67; 226 NW 836 (1929); they penalize plaintiffs who have not been industrious in pursuing their claims, First National Bank of Ovid v Steel, 146 Mich 308; 109 NW 423 (1906); they “afford security against stale demands when the circumstances would be unfavorable to a just examination and decision”, Jenny v Perkins, 17 Mich 28, 33 (1868); they relieve defendants of the prolonged fear of litigation, Bigelow [v Walraven], supra, [392 Mich at] 576 [;221 NW2d 328 (1974)]; they prevent fraudulent claims from being asserted, Bailey v Glover, 88 US (21 Wall) 342; 22 L Ed 636 (1875); and they “ ‘remedy. .. the general inconvenience resulting from *413 delay in the assertion of a legal right which it is practicable to assert’ Lenawee County v Nutten, 234 Mich 391, 396; 208 NW 613 (1926).
In Lemmerman v Fealk,[10] we further noted that “ ‘the primary purposes behind statutes of limitations are: 1) to encourage plaintiffs to pursue claims diligently, and 2) to protect defendants from having to defend against stale and fraudulent claims.’ ” And certainly, had plaintiff herein failed to diligently pursue her claim, or attempted to file a fraudulent claim, this Court would not hesitate to summarily apply these statutes of limitations to bar plaintiffs suit.
However, neither of these policy considerations will be furthered by application of these provisions given that plaintiff was deprived of the evidence necessary to even establish that a claim existed until long after the period of limitations had expired. It is precisely in situations such as the one plaintiff faces here that this Court has applied the discovery rule to prevent a statute of limitations from foreclosing a plaintiffs right to bring suit. And, in fact, the law in this state in 1986, the year of Dr. Eby’s murder, was that a cause of action did not accrue until the elements forming the basis of the complaint could be pleaded:
In the case of an action for damages arising out of tortious injury to a person, the cause of action accrues when all of the elements of the cause of action have occurred and can be alleged in a proper complaint.
Those elements are four in number.
(1) The existence of a legal duty by defendant toward plaintiff.
(2) The breach of such duty.
*414 (3) A proximate causal relationship between the breach of such duty and an injury to the plaintiff.
(4) The plaintiff must have suffered damages.[11]
At the time of Dr. Eby’s death, not all the elements of a wrongful death action had “occurred.” The majority disagrees with this contention, ante at 389 n 10, arguing that each element of plaintiffs claim had “occurred” at the time Dr. Eby was murdered; however, while I concede that the events had “occurred,” the fact is that plaintiff did not have enough information to allege that Dr. Eby’s death was the result of the negligent acts of Ruth Mott, MFO and its employees, and Buckler Automatic Lawn Sprinkler Company and its employees and owners. In other words, the information available to plaintiff at the time of Dr. Eby’s death did not put plaintiff on notice that a claim could be made against the various defendants. Plaintiff was not alerted to the availability of a claim to be made against defendants until plaintiff learned the identity of the killer and the killer’s connection to defendants. Plaintiff was not aware of the killer’s identity, nor was plaintiff aware of the connection the killer had to any of the potential defendants. Consequently, there was no basis for pleading that any duty was owed to the plaintiff by any potential defendant. The evidence collected tended to show that Dr. Eby was killed by an acquaintance, given that there was no sign of forced entry into the gatehouse. Because the police evidently theorized that Dr. Eby knew the killer, their investigation focused on Dr. Eby’s known acquaintances. Consequently, the police never questioned killer Jeffrey Gorton, the Buckler employee, nor was there ever any investigation into the relationship between Buckler, MFO, and Ruth Mott. Dr. *415 Eby’s murder remained unsolved until years after the period of limitations had expired; thus, plaintiff lacked the essential piece of evidence — the fact that Buckler employee Jeffrey Gorton attacked, raped, and killed Dr. Eby. It was only upon discovering this critical information that plaintiff was able to establish, after reopening the investigation, that the elements necessary to bring a wrongful death claim were in fact all present and could be alleged in a complaint.
And while defendants have asserted that despite the absence of the critical information pertaining to how Dr. Eby in fact died, plaintiff could still have adequately alleged a general negligence claim within the statutory period, had she done so, her claim likely would have been deemed legally deficient given that the criminal evidence collected at the time of Dr. Eby’s death tended to indicate that Dr. Eby herself allowed the killer into her own home.
As we stated in Stephens v Dixon,[12] this case presents the unique situation in which this Court has traditionally applied the discovery rule:
In Michigan, the limitation period for ordinary negligence actions such as the case at bar is three years. MCL 600.5805(8); MSA 27A.5805(8). The most complicated problem associated with statutes of limitation, and the problem presented in this case, is that of determining when they begin to run. MCL 600.5805(8); MSA 27A.5805(8) provides that “[t]he claim accrues at the time... the wrong upon which the claim is based was done regardless of the time when damage results.” MCL 600.5827; MSA 27A.5827. We have held that the term “wrong,” as used in the accrual provision, refers to the date on which the plaintiff was harmed by the defendant’s negligent act, not the date on which the defendant acted negligently. Connelly v Paul Ruddy’s Equipment Repair & Service Co, 388 *416 Mich 146; 200 NW2d 70 (1972). Otherwise, a plaintiffs cause of action could be barred before the injury took place.
Another accrual problem associated with statutes of limitation occurs when a plaintiff is injured but is unaware of the injury. If the statute of limitation begins to run at the time of injury, it is possible that plaintiffs with perfectly valid claims could be prevented, through no fault of their own, from bringing their actions within the specified period of limitation. In situations such as these, the common law has developed equitable rules to mitigate the harsh effects of the statute of limitation. One such exception is the discovery rule. The discovery rule, based on principles of fundamental fairness, “was formulated to avoid the harsh results produced by commencing the running of the statute of limitations before a claimant was aware of any basis for an action.” Hammer v Hammer, 142 Wis 2d 257, 264; 418 NW2d 23 (1987).
We explained the discovery rule in Chase v Sabin, 445 Mich 190, 196-197; 516 NW2d 60 (1994). In Chase, a 1963 eye operation failed because of an event that occurred during the operation. The plaintiff was not told of the occurrence. In 1988, while pursuing an unrelated worker’s compensation claim, the plaintiff’s attorney obtained a hospital record of the surgery and learned of the event. We stated:
“Similarly, because statutes of limitation do not evidence a legislative intent to extinguish a cause of action before the plaintiff is aware of the possible cause of action, we have adopted the discovery rule in the appropriate instances. Last term... we held that the discovery rule controls the date a pharmaceutical products liability action accrues. ‘If the three-year period of limitation began to run at the time of the defendant’s breach, most, if not all, claims would be barred before the plaintiff had reason to know of the injury and the cause of the injury. Such an interpretation seeks “to declare the bread stale before it is baked.” ’ (Citation omitted.)”
We note that while the discovery rule serves as an important limit, on a mechanical and unjust termination of *417 a legitimate cause of action, there can be equitable problems with the imposition of the discovery rule as well. As one commentator has stated:
“While providing equitable relief to plaintiffs otherwise harred by a strict application of the statute of limitations, the discovery rule also threatens legitimate interests of the defendant which the statute protects. While it may be harsh to bar the action of a plaintiff who, through no fault of his own, did not discover his injury until after the running of the statute, it is also unfair... to compel a defendant to answer a charge arising out of events in the distant past. The discovery rule tends to undermine the sense of security that the statute of limitations was designed to provide, namely, that at some point a person is entitled to put the past behind him and leave it there. [Olsen, The discovery rule in New Jersey; Unlimited limitation on the statute of limitations, 42 Rutgers L R 205, 211-212 (1989).]”
Given the competing interests of balancing the plaintiffs right to bring a claim once a plaintiff learns of the injuries with the defendant’s right not to have to defend a stale claim, the Stephens Court went on to discuss when to apply the discovery rule:
In the present case, the plaintiff proposes that we take a step beyond the rule of Chase [v Sabin, supra]. There, we held that “the discovery rule governs the accrual date for negligence claims, pursued against hospitals and their agents, which are similar to malpractice claims.” Id. at 201. By contrast, the present case involves allegations of ordinary negligence.
In Moll v Abbott Laboratories, 444 Mich 1, 12-13; 506 NW2d 816 (1993), we noted this Court’s adoption of the discovery rule for medical malpractice cases in Johnson v Caldwell, 371 Mich 368; 123 NW2d 785 (1963), in negligent misrepresentation cases in Williams v Polgar, 391 Mich 6; 215 NW2d 149 (1974), and in products liability actions for asbestos-related diseases in Larson v Johns-Manville Sales Corp, 427 Mich 301; 399 NW2d 1 (1986). In Moll, we *418 extended the application of the discovery rule to products liability actions for pharmaceutical products liability actions. Defendant correctly points out that in these contexts, evidentiary records are rarely diminished by the passage of time. Hence, as we stated in Larson, supra at 312, quoting Eagle-Pitcher Industries, Inc v Cox, 481 So 2d 517, 523 (Fla App, 1985), “the concern for protecting defendants from ‘time-flawed evidence, fading memories, lost documents, etc.’ is less significant in these cases.” That is not the case in automobile tort liability cases, where the evidence for liability defense is often dependent on fading memories of individual witnesses.
We hold that the discovery rule is not available in a case of ordinary negligence where a plaintiff merely misjudges the severity of a known injury. [Id. at 537.]
Ultimately, the Stephens Court declined to extend the discovery rule in that case because, unlike plaintiff herein, the plaintiff in Stephens not only knew she was injured, hut knew the cause of her injury before the period of limitations expired. The plaintiff in Stephens had argued that even though she knew she was injured, she did not know the true extent of her injuries until after the period of limitations had expired. Citing Connelly, supra, the Court declined to apply the discovery rule and restated the rule that “a cause of action for tortious injury accrues ‘when all of the elements of the cause of action have occurred and can be alleged in a proper complaint.’ ”[13]
In contrast to the plaintiff in Stephens, plaintiff Trentadue, as personal representative of the estate of Eby, did not have the information available to bring a wrongful death claim until she knew who the killer was and how, the killer managed to get access to Dr. Eby’s private residence. Essentially, the “injury,” that is, the *419 wrongful death, was not apparent until 16 years after Dr. Ehy’s death. Nor was the “cause” of that injury apparent until after the period of limitations had expired.
In determining when the wrongful death claim accrued, we turn to MCL 600.5827:
Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results. [Emphasis added.]
The statute does not define “wrong” or “damage,” but this Court has already examined these terms and provided the following analysis:
Defendants argue that the statutory provision “* * * the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results” means, in the context of this case, that claims against them are barred, since breach of duty claimed against them must have occurred prior to March 15, 1965, more than 3 years before action was commenced.
Defendants contend that the word wrong refers to an act of carelessness or negligence in repairing or handling the press. By their view, the word damage refers to the personal injury suffered by the plaintiff on May 12, 1965, the day that the press malfunctioned.
Defendants claim that interpreting the word wrong to mean actionable wrong, tort, harm or injury is to broaden the meaning of that word, and render the word damage entirely meaningless.
It is argued by the plaintiff that under such a view, her claim is barred before she was hurt. She would never have been able to commence an action at all.
*420 By that interpretation, plaintiff says, the statute is not one of limitation but one of abolition, completely destroying her cause of action before it arises.
Defendants counter by pointing out that the statute of limitations is a statute of repose, designed to protect defendants from stale claims; that this is an industrial state and it is therefore reasonable to conclude that the Legislature intended to protect industrial and commercial interests by fixing a certain limit upon exposure to liability for faulty products and workmanship.
We cannot accept the defendants’ view. However desirable the stated objectives might be, it is doubted that such was the legislative purpose. The statute in question is the Revised Judicature Act. It was drawn, as defendants point out, by a distinguished committee of lawyers, known as the Joint Committee on Michigan Procedural Revision. The purpose of the Act was to effect procedural improvements, not advance social, industrial or commercial policy in substantive areas.
The word damage is not rendered meaningless in a fair reading of the statute, even where the word wrong is understood to mean actionable wrong.
It is quite common in personal injury actions to allege and prove future loss of earning capacity, future medical expenses, future pain and suffering. Indeed all of these elements must be alleged and proved in a single cause of action. Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run. Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred. [Connelly, supra at 150-151 (emphasis added).]
Thus, for purposes of a wrongful death action in which a plaintiff seeks damages for tortious injuries and death suffered by the decedent, the time that the claim first accrues is the point in time when “all of the elements of an action for personal injury, including the *421 element of damage, are present...Id. at 151. Because plaintiff, through no fault of her own, lacked the information necessary to establish the elements of wrongful death until 16 years after Dr. Eby’s death, the claim did not accrue until plaintiff became aware of that information.
Today, the majority overrules Johnson and its progeny, effectively depriving plaintiff, and future potential injured parties, from seeking compensation when their injuries are not known to them before the statutory period of limitations expires. As a result, statutes of limitations will be imposed not on those who would sit on their rights, but on the innocent, who, through no fault of their own, have been deprived of the information necessary to bring an otherwise valid claim.
The majority’s justification for the abolition of the discovery rule is that, with the enactment of MCL 600.5801 et seq., the Legislature created a comprehensive statutory scheme meant to supersede any existing common law dealing with the subject matter. Ante at 390-391. Yet the authority cited in support of the majority’s argument is unpersuasive. The majority points to Hoerstman Gen Contracting, Inc v Hahn[14] as the basis for its conclusion that MCL 600.5801 et seq. were enacted to abrogate the common-law discovery rule. However, in Hoerstman, the statute at issue was article 3 of the Uniform Commercial Code, MCL 440.3101 et seq. The question we faced was whether after the enactment of MCL 440.3311, the common-law defense of accord and satisfaction was eliminated. In finding that the Legislature did so intend, we stated:
As already noted, Article 3 of the UCC is comprehensive. It is intended to apply to nearly every situation involving *422 negotiable instruments. See MCL 440.3102. The language contained in MCL 440.3311 completely covers the details of accord and satisfactions.
MCL 440.3311(3) and (4) contain exceptions or conditions. Their enumeration eliminates the possibility of their being other exceptions under the legal maxim expressio unius est exclusio alterius. The maxim is a rule of construction that is a product of logic and common sense. This Court long ago stated that no maxim is more uniformly used to properly construe statutes.
Therefore, the language of the statute shows that the Legislature covered the entire area of accord and satisfactions involving negotiable instruments. It clearly intended that the statute would abrogate the common law on this subject. [Id. at 74-75 (citations omitted; emphasis added).]
The rationale from Hoerstman is not applicable to the statutory scheme at issue here because MCL 600.5801 et seq. lack the comprehensive enactment language found in the negotiable instruments statute. Importantly, MCL 440.3102 defines the scope of the statute and its reach, whereas the same cannot be said of MCL 600.5805. In particular, MCL 440.3102(1) provides: “This article applies to negotiable instruments. It does not apply to money, to payment orders governed by article 4a, or to securities governed by article 8.” (Emphasis added.) Chapter 58 of the Revised Judicature Act does not contain a comparable provision defining the scope of the chapter.
The majority claims that Hoerstman and Millross are not distinguishable on this basis, ante at 390 n 12, because these cases do not establish that the Legislature must use certain language to abrogate the common law. However, as the Hoerstman Court correctly noted, “[t]he Legislature has the authority to abrogate the *423 common law.”[15] And “[w]hen it does so, it should speak in no uncertain terms.”[16] Thus, language defining the scope of a chapter is just one example of the kind of language that the Legislature has used to convey its intent to abrogate the common law. What is important in conveying such intent is that the legislation be comprehensive.
For example, the Hoerstman Court cited Millross, supra, for the proposition that comprehensive legislation abrogates the common law.[17] Millross provides even stronger evidence that the statutory scheme herein is distinct from the statutory schemes at issue in both Hoerstman and Millross. Specifically, in Millross, this Court noted that abrogation was appropriate because it was clear that “the Legislature intended the dramshop act to be a complete and self-contained solution to a problem not adequately addressed at common law and the exclusive remedy for any action arising under ‘dramshop-related facts.’ ”[18] “Indeed,” the Court went on to note that
the Legislature has amended the act to expressly codify this intent in 1986 PA 176, which provides in pertinent part, “This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor.” MCL 436.22(11); MSA 18.993(11). [Millross, supra at 186 (emphasis added).]
In contrast, nowhere in chapter 58, Limitations of Actions, is there a provision establishing that that chapter is exclusive. Nor is there any language evidencing an intent by the Legislature to abolish the common-law discovery rule in order to provide “complete and *424 self-contained” legislation limiting the time in which actions could be brought and thereby replace the discovery rule.
The majority asserts, ante at 391, that because the Legislature included MCL 600.5855,[19] the application of the common-law discovery rule will render § 5855 meaningless. I disagree, given that in order for a plaintiff to avail himself or herself of § 5855, there must still be evidence of fraudulent concealment. Here, where there does not appear to be evidence of fraudulent concealment on the part of any of the named defendants, plaintiff would not be able to use this provision.[20] Thus, the *425 fraudulent concealment provision would not be helpful to this plaintiff, nor to other plaintiffs who, in the absence of fraudulent concealment, are unable to pursue a claim because they did not have the information necessary to establish a claim until after the period of limitations had expired.
Further, I disagree with the majority’s assertion that a narrowly drawn statute purports to change an entire body of common law in the absence of the Legislature explicitly stating that it so intends. The majority’s assertion incorrectly assumes that a narrowly tailored statute, which is silent with regard to the broad scope of the discovery rule, somehow changes the entire application of the discovery rule.[21]
Given the distinct need for the common-law discovery rule to assist these innocent plaintiffs, it cannot be said that the continued existence of the discoveiy rule makes § 5855 superfluous. The two provisions can peacefully coexist because they serve different purposes.
Indeed, it is evident that when the Legislature wanted to supersede the common-law discovery rule, it did so specifically with regard to certain claims. For example, MCL 600.5838 establishes the time in which a malpractice claim accrues:
*426 (1) Except as other provided in section 5838a, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.
(2) Except as otherwise provided in section 5838a, an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred. [Emphasis added. ][22]
In contrast to the malpractice limitation provisions, which indicate with specificity how the discovery rule should be applied, the wrongful death limitation provisions at issue here do not bar the use of the common-law discovery rule, nor do they limit the application of the discovery rule in certain instances. Given the coexistence of these various limitation provisions, it is apparent that the Legislature recognized the continuing existence and viability of the common-law discovery rule and saw fit to limit it in certain instances (§§ 5838 and 5838a), but not in all instances. Specifically, MCL 600.5805 does not contain any provisions limiting the application of the discovery rule, but instead provides:
*427 (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
(10) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.
Ultimately, if plaintiff is denied her day in court on the basis of the majority’s interpretation of MCL 600.5827, plaintiff will be denied due process. This Court has held that while the Legislature has the power to enact statutes of limitations, those provisions will be deemed unconstitutional if they unreasonably deprive a plaintiff from bringing an otherwise valid claim:
The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. A statute which forbids any suit for the recovery of lands is not a statute of limitations, but a statute to pass to adverse possessors the title of all other claimants; and its validity cannot depend upon the name bestowed upon it. It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought; and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would *428 be a palpable violation of the constitutional provision that no person shall be deprived of properly without due process of law. [Price v Hopkin, 13 Mich 318, 324-325 (1865) (citations omitted).]
More recently, this Court cited Price to support this Court’s long history of applying the discovery rule when a statute of limitations would wrongfully deprive a plaintiff of a reasonable time in which to bring a claim:[23]
A statute of limitation should provide plaintiffs with a reasonable opportunity to commence suit. For over one hundred years, this Court has sought to fulfill this purpose, construing statutes accordingly.
Our adherence to this principle resulted in our holding that the term “wrong,” as stated in the accrual statute, designated the date on which the plaintiff was harmed by the defendant’s negligent act, as opposed to the date the defendant acted negligently Connelly v Paul Ruddy’s Equipment Repair & Service Co, 388 Mich 146; 200 NW2d 70 (1972). Necessity dictated such a conclusion because an opposite interpretation could potentially bar a plaintiffs legitimate cause of action before the plaintiffs injury
Similarly, because statutes of limitation do not evidence a legislative intent to extinguish a cause of action before the plaintiff is aware of the possible cause of action, we have adopted the discovery rule in the appropriate instances. Last term, in Moll, supra at 13, we held that the discovery rule controls the date a pharmaceutical products liability action accrues. “If the three-year period of limitation began to run at the time of the defendant’s breach, most, if not all, claims would be barred before the plaintiff had reason to know of the injury and the cause of the injury Such an interpretation seeks ‘to declare the bread stale before it is baked.’ ” (Citation omitted.) The same reasoning compelled our application of the discovery rule to *429 products liability actions premised on asbestos related injuries, Larson, supra. In Southgate School Dist v West Side Construction Co, 399 Mich 72, 82; 247 NW2d 884 (1976), we held that the discovery rule governs the date a breach of warranty claim accrues, providing plaintiffs with an adequate opportunity to bring suit. See also Williams v Polgar, 391 Mich 6; 215 NW2d 149 (1974) (the discovery rule governs the accrual of negligent misrepresentation cases), and Dyke v Richard, 390 Mich 739; 213 NW2d 185 (1973) (the discovery rule governs the accrual of medical malpractice cases).
The majority opinion disputes the applicability of Price, yet this Court adopted the rationale from Price in both Moll and Chase on the basis that in each case, where the plaintiff was not aware of the injury or its cause, the discovery rule was appropriately invoked to permit the plaintiff to go forward on an otherwise time-barred claim. A statute of limitations that effectively deprives a plaintiff of the substantive right to bring an action is unreasonable.[24]
CONCLUSION
As a result of the majority’s conclusion that MCL 600.5827 exclusively governs the time of accrual of *430 plaintiffs claims and that the discovery rule is therefore no longer available to a plaintiff who could not reasonably have discovered the elements of a cause of action, the majority has succeeded in depriving plaintiff, and those similarly situated, from having their day in court.
Because I disagree with the majority’s conclusion that with the enactment of the Revised Judicature Act, the Legislature sought to abrogate the discovery rule, I would affirm the Court of Appeals decision applying the common-law discovery rule and tolling the period of limitations where plaintiff could not have reasonably discovered the elements of a wrongful death cause of action within the limitations period.
CAVANAGH, J., concurred with WEAVER, J.

 Johnson v Caldwell, 371 Mich 368, 379; 123 NW2d 785 (1963). See also Moll v Abbott Laboratories, 444 Mich 1, 16-17; 506 NW2d 816 (1993).

 462 Mich 439; 613 NW2d 307 (2000).

 Id. at 466.

 MFO was formed in 1969 to attend to the financial and personal needs of Ruth Mott, her children, and her nieces and nephews.

 Gorton was apprehended in Florida and sentenced to life in prison on February 13, 2003, after pleading no contest to first-degree murder, MCL 750.316, and first-degree criminal sexual conduct, MCL 750.520b.

 With regard to her claims against Buckler and the Gortons for negligent hiring and negligent supervision, plaintiff alleged that in 1985, a year before Gorton killed Dr. Eby, Gorton’s parents were aware that Gorton had just been released from a Florida prison after serving time for assault crimes. Evidently Jeffrey Gorton had a history of violence against women, and his felony convictions in Florida involved physical assaults on women.
His paternal grandparents even appeared for his sentencing in Florida and begged the judge to permit Gorton to get psychiatric help for his violent outbursts against women. Yet, despite this knowledge, the Gortons employed their son in the family business and sent him to service the sprinklers at the Mott Estate.

 Plaintiff suggests that when Nyberg and Bakos gave Gorton access on November 5, they failed to resecure the gatehouse basement access so that Gorton was then later able to enter the gatehouse on November 7 through the unlocked basement door.

 Trentadue v Buckler Automatic Lawn Sprinkler Co, 266 Mich App 297; 701 NW2d 756 (2005). The decision was initially unpublished, but the Court later granted plaintiffs publication request.

 414 Mich 160, 166-167; 324 NW2d 9 (1982).

 449 Mich 56, 65; 534 NW2d 695 (1995) (citation omitted).

 Connelly v Paul Ruddy’s Equip Repair & Service Co, 388 Mich 146, 150; 200 NW2d 70 (1972).

 449 Mich 531, 534-536; 536 NW2d 755 (1995).

 Stephens, supra at 539, quoting Connelly, supra at 150.

 474 Mich 66, 74; 711 NW2d 340 (2006), quoting Millross v Plum Hollow Golf Club, 429 Mich 178, 183; 413 NW2d 17 (1987), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441.

 Hoerstman, supra at 74.

 Id.

 Id.

 Millross, supra at 185-186.

 MCL 600.5855 states:
If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is hable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is hable for the claim, although the action would otherwise be barred by the period of limitations.

 This Court discussed fraudulent concealment in Int’l Union United Auto Workers v Wood, 337 Mich 8, 13-14; 59 NW2d 60 (1953):
Fraudulent concealment was defined in De Haan v. Winter, 258 Mich 293, 296[; 241 NW 923 (1932), superseded by statute on other grounds Morgan v Taylor, 434 Mich 180 (1990)], as meaning the “employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts rehed on must be of an affirmative character and fraudulent.”
Fraudulent concealment is more than mere silence. McNaughton v. Rockford State Bank, 261 Mich 265, 268[; 246 NW 84 (1933)].
*425 . . . Concealment by one other than the one sought to be charged is not within the prohibition of the statute. See Stevenson v. Robinson, 39 Mich 160 [1878],

 While the majority asserts incorrectly that the fraudulent concealment statute is “subsumed,” ante at 399, by the discoveiy rule because the discoveiy rule encompasses both fraudulent concealment claims and non-fraudulent concealment claims, the fact that the discovery rule has a broader application than the fraudulent concealment statute does not mean that the Legislature sought to allow the use of the discoveiy rule only with respect to fraudulent concealment claims. Nor does the continued existence of the discoveiy rule vitiate the fraudulent concealment statute, which merely represents the Legislature’s decision to specify how the common-law discovery rule applies to fraudulent concealment claims.

 MCL 600.5838a contains a comparable accrual provision abolishing the availability of the discovery rule for medical malpractice claims filed under that statute.

 Chase v Sabin, 445 Mich 190, 195-197; 516 NW2d 60 (1994).

 Taxpayers Allied for Constitutional Taxation v Wayne Co, 450 Mich 119, 125-126; 537 NW2d 596 (1995) (“The one-year limitation is not in the class of limitation periods that are ‘so harsh and unreasonable in their consequences that they effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right.’ Forest v Parmalee, 402 Mich 348, 359; 262 NW2d 653 [1978], citing Buscaino v Rhodes, 385 Mich 474; 189 NW2d 202 [1971].”).
While the Taxpayers Court upheld the one-year statute of limitations at issue, what is notable about that decision is the fact that the Court acknowledged that when a limitations period effectively deprives a plaintiff of judicial access, it will not be upheld. That is the very situation we face here if this Court deprives plaintiff of the right to apply the common-law discovery rule.